241 So.2d 369 (1970)
WEST FLAGLER ASSOCIATES, LTD., Petitioner, Cross-Respondent,
v.
BOARD OF BUSINESS REGULATION, of the State of Florida, C.C. Harrison, Jr., Chairman, Thomas Wood, Secretary, Charles Rex, Jr., Eugene Toll and Rodger P. Boyle, Members of Said Board, Department of Business Regulation of the State of Florida and A.R. Brautigam, Executive Director of Said Department, Division of Pari-Mutuel Wagering, and Alfred B. Austin, Chairman, Fred J. Akel, Secretary, L.D. Plante, James W. Taylor and L.B. Walker, Members of Said Division, Biscayne Kennel Club, Inc., a Florida Corporation, Investment Corporation of South Florida, a Florida Corporation, and Miami Beach Kennel Club, Inc., a Florida Corporation, Respondents, Cross-Petitioners.
No. 40187.
Supreme Court of Florida.
October 20, 1970.
On Rehearings and Clarification November 2, 1970.
*371 Stuart W. Patton and Donald W. Stobs, Jr., of Patton, Kanner, Tietig & Segal, Miami, and Eli H. Subin, of Roth, Segal & Levine, Orlando, for petitioner-cross-respondents.
George W. Wright, Jr., Thomas S. Trantham, Jr., Miami, of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, and Bruce G. Davis, Tallahassee, for Biscayne Kennel Club, Inc.
Wilbur E. Brewton and J. Riley Davis, Tallahassee, Dominick J. Salfi, Orlando, Earl Faircloth, Atty. Gen., and T.T. Turnbull, Asst. Atty. Gen., for Board of Business Regulations.
Marion E. Sibley, of Sibley, Giblin, Levenson & Ward, Miami Beach, for Investment Corp. of South Florida.
Carl T. Hoffman, of Hoffman, Kemper & Johnson, Miami, for Miami Beach Kennel Club.
ADKINS, Justice.
By petition and cross-petition for certiorari, we have for review decisions of the District Court of Appeal, First District, in State ex rel. West Flagler Associates, Ltd. v. Board of Business Regulation et al., 238 So.2d 677, (case No. 0-22, op. filed August 31, 1970), and in Biscayne Kennel Club, Inc. v. Board of Business Regulation et al., 239 So.2d 53, (case No. 0-38 op. filed August 31, 1970), which allegedly conflict with prior decisions of this Court on the same point of law. Fla. Const. art. V, § 4, (F.S.A.).
For clarity, Petitioner, West Flagler Associates, Ltd., is referred to as "Flagler"; Cross-Petitioner, Biscayne Kennel Club, Inc., is referred to as "Biscayne"; Respondent, Board of Business Regulation and the Members thereof, are referred to as "the Board"; Respondent, Division of Pari-Mutuel Wagering and the Members thereof, are referred to as "the Division"; Respondent, Investment Corporation of South Florida, is referred to as "Hollywood"; and Respondent, Miami Beach Kennel Club, Inc., is referred to as "Miami Beach."
Biscayne, Miami Beach, Flagler and Hollywood are greyhound race tracks holding permits to conduct dog racing under the laws of Florida. Biscayne, Miami Beach and Flagler are the only tracks in Dade County, while Hollywood is the only track in Broward County. There are no other greyhound race tracks in Broward County. Prior to April 1, 1970, Biscayne, Miami Beach, Flagler and Hollywood filed their respective applications with the Division for the issuance of annual licenses to conduct dog racing meets and for the fixing *372 by the Division of dog racing dates for the 1970-1971 season.
Biscayne requested that its meet be conducted from September 3, 1970 through January 2, 1971, for a total of one hundred five days of evening racing, unopposed by any other dog track.
Miami Beach requested a total of one hundred five days of evening racing on a split-meet basis from September 3, 1970 through November 3, 1970, and from January 4, 1971 through March 4, 1971. Miami Beach requested the Division to grant it fifty-three noncompetitive racing days and fifty-two competitive days, and "that each of the greyhound Permittees in the Miami-Hollywood area be likewise allotted fifty-two noncompetitive and fifty-two competitive days of racing, so that they all may be treated equally."
Flagler requested that they open May 3, 1971 and close on September 1, 1971 for a total of one hundred five days of evening racing.
Hollywood requested a total of one hundred four days of evening racing from November 4, 1970 through March 4, 1971, with the same conditional request as made by Miami Beach relating to fifty-two days of competition and fifty-two days of noncompetition among Hollywood and the three Dade County race tracks.
Under the dates so requested by the tracks, Biscayne and Miami Beach would be in competition from September 3 through November 3; Biscayne and Hollywood would be in competition from November 4 through January 2; Miami Beach and Hollywood would be in competition from January 4 through March 4; and Flagler would run on a noncompetitive basis from May 3, 1971 until September 1, 1971.
There would be no racing from March 4, 1971 until May 3, 1971.
A hearing was held before the Division upon the applications of Biscayne, Miami Beach, Flagler and Hollywood. Biscayne and Flagler both objected to the Division's power and authority to fix and set greyhound racing dates for Hollywood and to apportion the racing dates for the 1970-1971 season among the three Dade County tracks and Hollywood, the sole Broward County track. These objections were overruled by the Division and dates were awarded whereby each of the four tracks would run fifty-two days without competition from any of the other three tracks and fifty-two days in direct competition with one of the other three tracks. The following dates were finally approved by the Division:

 Opposed or
 Track Dates Days Unopposed 
Miami Beach 9-3-70 thru 52 Unopposed
 11-3-70
 7-5-71 thru 52 Opposed by
 9-2-71 Flagler
 (18 matinees)
Hollywood 11-4-70 thru 52 Unopposed
 1-2-71
 1-4-71 thru 52 Opposed by
 3-4-71 Biscayne
 (18 matinees)
Biscayne 1-4-71 thru 52 Opposed by
 3-4-71 Hollywood
 3-5-71 thru 52 Unopposed
 5-4-71
 (10 matinees)
Flagler 5-5-71 thru 52 Unopposed
 7-3-71
 7-5-71 thru 52 Opposed by
 9-2-71 Miami Beach
 (50 matinees)

(In the context of this case, opposed and unopposed dates mean competitive and noncompetitive dates.)
Biscayne then filed appeals with the Board to review the Division's action in fixing and apportioning among Biscayne, Hollywood, Miami Beach and Flagler racing dates for the 1970-1971 greyhound racing system. Flagler filed its joinder as an appellant in the appeal taken by Biscayne, but the Board, upon motions by Hollywood and Miami Beach, dismissed Flagler joinder as an appellant leaving it as an appellee in Biscayne's case. Flagler then filed with the District Court of Appeal, First District, (hereinafter referred to as the "District Court"), a petition for the issuance *373 of an alternative writ of mandamus and for the issuance of a rule nisi in prohibition directed to the actions of the Division in fixing and allocating among three Dade County greyhound tracks and one Broward greyhound track racing dates for the 1970-1971 racing system and also directed to the Board's order dismissing Flagler joinder in appeal from the decision of the Division. This is case No. 0-22 in the District Court.
Flagler argued in case No. 0-22 that the Division was required by Fla. Stat. § 550.083, F.S.A., to allow a Permittee to have the racing dates it requests and the Division could not lawfully attempt to allocate dates as among the Dade County dogtracks unless they requested competing conflicting dates.
Biscayne filed a petition for writ of certiorari in the District Court in case No. 0-38 and moved for a consolidation of its petition with Flagler's prohibition and mandamus proceeding. The consolidation was denied. It should be noted that the parties in both the Flagler and Biscayne proceedings were the same. The District Court filed its opinion and decision in the mandamus and prohibition proceedings of Flagler discharging its alternative writ of mandamus theretofore issued and denying Flagler's petition for writ of prohibition. On the same date, the District Court filed its opinion dismissing the petition for writ of certiorari filed by Biscayne and denying Biscayne the relief it sought. These are the decisions the Petitioner and Cross-Petitioner seek to have reviewed by this Court.
The first question to be determined is whether the two decisions of the District Court may be reviewed by a petition for certiorari filed by Flagler and a cross-petition filed by Biscayne. Hollywood asserts that a single petition for certiorari seeking review of two separate decisions of the District Court is not permitted.
The same parties were involved in State ex rel. West Flagler Associates, Ltd. v. Board of Business Regulation et al., supra, as in Biscayne Kennel Club, Inc. v. Board of Business Regulation, supra, the same issues were raised in each case and the same ultimate relief sought even though by different remedies. While the District Court in State ex rel. West Flagler Associates, Ltd. denied the relief sought by Flagler on the basis that mandamus would not lie to compel the exercise of a discretionary function and prohibition would not issue because of the completion of the act sought to be prohibited, the District Court clearly treated both causes together, as stated by the District Court in Biscayne Kennel Club, Inc.:
"Flagler has heretofore filed in this court its petition for a writ of mandamus and for a writ of prohibition in which the same bone of contention was raised. By order of this court handed down simultaneously with this opinion, we have denied Flagler's petition. However, since factual matters involved are so closely related, it has been requested by some of the parties to these proceedings that their briefs filed in the mandamus proceedings be also used in this proceedings, which we find to be a reasonable request and helpful to us.
"* * *
"West Flagler has filed its brief as a respondent in this case. It complains of the same thing that Biscayne does  i.e. that the action of the Division and of the Board should be set aside or reversed, but in the brief filed here, Flagler insists that the proper remedy was by mandamus or prohibition, as claimed by it in its petition filed in this court as case number 0-22, 238 So.2d 677. It further states, however, that if this court should hold that its mandamus or prohibition were not proper, the same relief requested by Biscayne should be granted Flagler based upon the merits which are the same in both cases.
"* * *
"It is further contended in Flagler's brief that the Board misconceived its *374 scope of review and thereby failed to accord the appellants, Biscayne and Flagler, the essential requirements of law. Also it raises the same contention that the Division could not allocate racing dates on a two-county basis. We think we have adequately answered these questions adversely to Flagler's contentions by this opinion supra, and therefore hold that Flager is in the same posture as Biscayne and that neither is entitled to the relief sought."
In State ex rel. West Flagler Associates, Ltd., the District Court held the actions of the Division to be discretionary. Biscayne contends that the restrictive authority of the Division to fix and apportion racing dates only in counties having more than one greyhound race track is not a matter in which the Division had any discretion. Therefore, Biscayne contends that the Division had a duty to fix and apportion dates only among the three Dade County tracks. Biscayne further says that such duty being ministerial, mandamus, as well as certiorari, would lie to correct the error of the Division in not performing its legal duty.
The two decisions of the District Court sought to be reviewed here are so intertwined and interrelated, involving the same questions and the same issues of law, as well as the same parties, that a single petition for certiorari to review same is not only practical and expeditious but legally appropriate.
Hollywood, by motion to dismiss or strike, contends, inter alia, that both Biscayne and Flagler agreed to the racing dates awarded them and are, therefore, precluded from seeking a review. It is true that the dates finally awarded Flagler and Biscayne were agreed to, with a stipulated reservation of right of appeal, but only after the Division had overruled the contentions of both Flagler and Biscayne and only after the Division had advised the four tracks that it would fix and apportion dates among them on a fifty-two competitive and fifty-two noncompetitive basis. If the Division committed error in overruling the contentions of Biscayne and Flagler and assumed a power or authority which it did not possess, then the dates awarded after announcement by the Division of such erroneous ruling could not be validly said to have been consented to or agreed upon so as to bar a review of the Division's erroneous ruling.
Hollywood also says that Flagler cannot complain because the ruling of the Division was favorable to Flagler. It is true that the racing days allotted to Flagler by the Division were the same as those requested by Flagler. However, the requested days would have been noncompetitive. The allocation made by the Division placed Miami Beach in competition by Flagler from July 2 to August 31. The ruling of the Division was not so favorable as to preclude an opportunity for review by Flagler.
The motion of Hollywood that the petition of Flagler and cross-petition of Biscayne be stricken or dismissed is denied.
We now turn to the question of jurisdiction, i.e., whether the decisions of the District Court of Appeal were in direct conflict on the same point of law with decisions of this Court.
In State ex rel. West Flagler Associates, Ltd. v. Board of Business Regulation et al., supra, as well as Biscayne Kennel Club, Inc. v. Board of Business Regulation, et al., supra, the District Court held that the Division and the Board not only had the jurisdiction and authority to fix and set dates for greyhound racing of the only greyhound track (Hollywood) located within Broward County, but also to apportion and coordinate among the three Dade County tracks (Biscayne, Flagler and Miami Beach) and the one Broward County track the greyhound racing dates for the 1970-1971 racing season.
In State ex rel. Broward Kennel Club, Inc. v. Rose et al., 126 Fla. 288, 170 So. 710 (1936), the former state racing commission *375 [now the Division] fixed racing dates for the only Broward County dog track for the 1936-1937 racing season "to coordinate with a similar racing season set for the adjoining county of Dade wherein there are more than one dog and more than one horse track." The single Broward County track instituted a mandamus proceeding to compel the racing commission to rescind its action in fixing its racing dates and coordinating same with the three Dade County tracks. This Court held that the racing commission was totally without statutory authority under Subsection 1, Sec. 2, ch. 17276, Acts of 1935 [now Fla. Stat. § 550.02(1)] to fix and set the days or dates of operation of the single Broward County track and to coordinate same with the racing dates of the Dade County tracks. In issuing the peremptory writ of mandamus, this Court said:
"The racing season prescribed by the statute consists of both dates and days. In counties where more than one track is licensed to operate, the state racing commission has statutory authority to prescribe both dates and days of racing to be allowed the several tracks, subject only to the requirement that dates and days shall be apportioned on a fair and impartial basis. State ex rel. West Flagler Amusement Co. v. Rose, et al., 122 Fla. 227, 165 So. 60.
"* * *
"Under the proviso to subsection 1 of section 2 of chapter 17276, supra, respondents, racing commissioners were without statutory power to fit either the dates or the days of racing for relator as the operator of a licensed dog track in the one track county of Broward, therefore the peremptory writ of mandamus should issue as prayed for, and it is so ordered."
In St. Petersburg Kennel Club v. Baldwin et al., 38 So.2d 436 (Fla. 1949), the former state racing commission promulgated a rule which provided that no dog track located within a radius of fifty miles of a horse track would be permitted to operate matinee racing while any such horse track was operating. The St. Petersburg Kennel Club, located in Pinellas County, was within a fifty mile radius of Sunshine Park Horse Track, located in Hillsborough County, and thus subject to this rule. The St. Petersburg Kennel Club instituted a mandamus action in this Court to compel the racing commission to rescind the rule, contending that Fla. Stat. § 550.02
"[R]eveals (1) that the county is a unit by which the State Racing Commission is bound in the allocation of dog racing dates and (2) if there is only one licensed dog track in the county it may operate ninety days within the racing season at its option."
The Court agreed and held with the relator on both points, concluding that the questioned rule transcended the power and authority of the state racing commission in that it was not only discriminatory, as being without reasonable classification, but violated the provisions of Fla. Stat. § 550.02(1), F.S.A., which fixed the county as a unit for the regulation of racing dates. This Court concluded "it is our view that the legislature fixed the county as a unit for the regulation and the rule violates this requirement."
Because of this conflict, we have jurisdiction. We now proceed to the merits.
Both Flagler and Biscayne contend that the Division and the Board cannot lawfully allocate dog racing dates on a coordinated two-county basis because the county is the unit for regulation. The District Court held that the decisions in State ex rel. Broward Kennel Club, Inc. v. Rose et al., supra, and St. Petersburg Kennel Club v. Baldwin et al., supra, are no longer of persuasive value because of the subsequent enactment of Fla. Stat. §§ 550.083 and 550.291, F.S.A.
In legalizing the racing of dogs in Florida, with the usual enactment of the *376 pari-mutuel system of betting on races, the Legislature embarked upon a system of licensing and regulating a business which had theretofore been unlawful. See State ex rel. Hollywood Jockey Club, Inc. v. Stein et al., 133 Fla. 530, 182 So. 863 (1938). As stated by this Court in Hialeah Race Course, Inc. v. Gulf Stream Park Racing Ass'n, Inc., 37 So.2d 692 (Fla. 1948), appeal dismissed, 336 U.S. 948, 69 S.Ct. 885, 93 L.Ed. 1104 (1949):
"The state has become pecuniarily interested in racing because of the revenue from the pari-mutual betting. Authorized gambling is a matter over which the state may exercise greater control and exercise its police power in a more arbitrary manner because of the noxious qualities of the enterprise as distinguished from those enterprises not affected with a public interest and those enterprises over which the exercise of the police power is not so essential for the public welfare." (p. 694)
A racing permit or license granted under the Florida Statutes confers no franchise, but is a mere license granted, or withheld, at the option of the state acting under its police powers. However, the right to profitably enjoy the benefits of a license after it is already granted without undue prejudice to the licensee, or undue discrimination in favor of other licensees similarly situated, is likewise implied, if not expressed, in the statutes. State ex rel. West Flagler Amusement Co. v. Rose, et al., 122 Fla. 227, 165 So. 60 (1935).
Fla. Stat. § 550.02, F.S.A., contains the following provisions:
"The state racing commission shall carry out the provisions of this chapter and such commission shall personally or by agents supervise and check the making of pari-mutuel pools and the distribution therefrom, and:
"(1) Fix and set the dates for racing in any county where there are one or more horse tracks or one or more dog tracks seeking to race and holding ratified permits upon which any track can operate in any county, apportioning such dates to the several tracks in such counties as provided by law; provided, however, that where only one licensed dog track is located in a county, such track may operate ninety days during the racing season at the option of said dog track * * *." (Emphasis supplied)
Fla. Stat. § 550.083, F.S.A., contains the following provisions:
"(1) Owners of valid outstanding permits for dog racing in this state may hold race meetings at any time they choose during the fiscal year for the aggregate number of racing days fixed and permitted by law and subject to the approval of the state racing commission; provided, that no racing shall be conducted on Sunday."
Fla. Stat. § 550.291, F.S.A., reads as follows:
"(1) The Florida state racing commission may annually allocate to the owners of valid outstanding permits under and by virtue of which greyhound racing and harness racing is now conducted in this state, not less than ninety (90) days of racing, and not more than the number of racing days allocated or permitted to jai alai permittees, plus scholarship days and charity days allowed by law, Sundays excepted and excluded. Provided, however, the racing commission shall not allocate, for any one greyhound, harness or jai alai permittee, less than ninety or more than one hundred and five days of racing, plus scholarship days and charity days, Sundays excepted and excluded.
"(2) The provisions of this section are supplemental to other provisions of this chapter."
Neither Fla. Stat. § 550.291 nor § 550.083, F.S.A., repealed, expressly or by implication, the above-quoted provision of Fla. Stat. § 550.02(1), F.S.A. Until 1965 the *377 maximum number of days allowable to any greyhound track during each year was ninety. See Fla. Stat. § 550.08, F.S.A. Fla. Stat. 550.291, F.S.A., quoted above was enacted in 1965 as Chapter 65-435, and was expressly made supplemental to other provisions of the chapter relating to dog racing and horse racing. Under its provision the Division may grant a greyhound track up to one hundred five "days," but not less than ninety "days" of racing. Construing Fla. Stat. §§ 550.02(1) and 550.291, F.S.A., together, the Division may fix and apportion dates only among several tracks within one county and may allow any greyhound track in the state a total number of racing days of not less than ninety nor more than one hundred five, plus charity and scholarship days. But, a track located within a county having only one dog track may operate its total number of racing days on any dates it chooses except as limited by Fla. Stat. § 550.083, F.S.A.
We should consider other provisions of Fla. Stat. Ch. 550, in order to understand the concept of "racing seasons" as it has developed over the years since pari-mutuel wagering has been legalized in this state. Under Fla. Stat. § 550.04, F.S.A., dog race meetings could be held only during the period from November 1 of each year to and including May 31 of the year following, which was designated the "winter dog racing season." Tracks in Volusia County could operate a summer dog race meeting during the period from June 1 through September 30.
Fla. Stat. § 550.082, F.S.A., was enacted in 1959. This statute permitted one dog track among three or more operating within a radius of thirty-five miles of each other to operate, at its option, not more than fifty days of its aggregate number of operating days allowed by law during the period from July 1 through the first Monday in September.
From 1947 until 1961, there was a limited dog racing season; that is, tracks only in Volusia County could operate during the summer and then from 1959 to 1961 one of three or more greyhound tracks located within a thirty-five mile radius of each other could operate up to fifty of its aggregate number of operating days during the specified summer season.
In 1961, Fla. Stat. § 550.083, F.S.A., quoted above, was enacted. The effect of this statute was to eliminate any further distinction between summer and winter racing seasons and to permit year-around greyhound racing by any track "subject to the approval of the state racing commission." Fla. Stat. §§ 550.02(1) and 550.04, F.S.A., authorizes Hollywood, as the only Broward County dog track, to operate on any dates it chooses between November 1 and May 31 of the year following, but if it desires to operate on any dates falling between June 1 and October 31 [the remainder of the year], it must obtain Division "approval" as required by Fla. Stat. § 550.083, F.S.A. The three Dade County dog tracks are entitled to their days and dates independent of the interest of a dog track in any other county, as Fla. Stat. §§ 550.02(1) and 550.083, F.S.A., contemplate a one-county unit as the basis for regulating racing dates. This construction is strengthened by the fact that pari-mutuel permits must be validated by the voters of the county in which the pari-mutuel plant proposes to operate before the permit will be issued by the state. See Fla. Stat. §§ 550.05, 550.06 and 550.17, F.S.A., Broward County voters did not vote to validate any of the Dade County dog racing permits.
Fla. Stat. §§ 550.291 and 550.02(1), F.S.A., grant the Division the discretion to allow dog tracks to run at least ninety days but not more than one hundred five days each season. See also State ex rel. West Flagler Amusement Co., Inc. v. Rose et al., supra. The number of "days" to be allocated to the Dade County dog tracks is not in issue, as the Division has evidenced an intention to grant all three tracks in Dade County the maximum number of "days" allowable. The issue is whether the Division has the authority to disregard *378 the specific "dates" requested by the three Dade County tracks in their application for annual licenses and to then allocate the dates for the 1970-1971 racing season among the three tracks and the Broward County track. As discussed above, the allocation of "dates" should be on a county-unit basis and the Division improperly included Broward County.
Where several dog tracks in a single county request racing "dates" which are not in conflict, the Board and the Division should allocate these dates to the respective dog tracks, in the absence of a strong showing that the interests of the state are being adversely affected by the allocation of such dates. The factors to be considered are discussed in State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission, 74 So.2d 691 (Fla. 1954).
When two or more tracks in the same county request the same "dates" for dog racing, the Division may exercise a greater discretion in determining whether it would be in the best interests of the state to allow such competition or to allocate separate racing dates.
Hollywood's option under Fla. Stat. § 550.02(1), F.S.A., is the right to select its own racing dates within the winter season without approval of the Division or dates during the summer racing season with the approval of the Division. Hollywood does not have the option to have its dates coordinated with those in race tracks in any other county. Hollywood does not have the right in any way to control the periods of operation of the Dade County race tracks by a consideration of Hollywood's dates. The Division having done so, and as a consequence having disregarded the date request of some of the Dade tracks and foisted unnecessary competition upon others, any one of the Dade's tracks constitutes a proper party to raise this question.
State ex rel. Investment Corporation of South Florida v. Board of Business Regulation, 227 So.2d 674 (Fla. 1969), involved a situation where the Board would not allow Hollywood to operate during the days originally agreed upon before the Division and would not allow Hollywood to participate in a proceeding for review before the Board, when the Hollywood date was changed. We merely held that the rights of Hollywood would be adversely affected by the appeal to the Board because Hollywood was not allowed to participate in the hearing. This decision related to a procedural problem and did not determine the merits of the action of the Division or the Board. Because of the failure to review the matter properly, the original allocation made by the Division was approved.
The question is raised as to whether mandamus or certiorari is the appropriate remedy by which to obtain relief from the actions of the Board and the Division. Fla. Stat. § 120.31, F.S.A., (Administrative Act), provides that the final orders of an agency entered in any agency proceeding or in the exercise of any judicial or quasi-judicial authority shall be reviewable by certiorari. Subsection 4, of this statute, also provides that, when appropriate, a party may attack an adverse order by mandamus, prohibition or injunction. The fact that the Division and the Board may be clothed with some quasi-judicial function would not prevent the use of mandamus as an alternative remedy if the particular duty sought to be enforced was a ministerial one and not subject to exercise of discretion. It is the nature of the particular thing to be done that determines whether its character is ministerial for mandamus purposes. See 21 Fla.Jur., Mandamus, § 78; 16 F.L.P., Mandamus, § 14.
Insofar as it was the duty to apportion greyhound racing dates for the three tracks within a single county (Dade) and not to fix Hollywood dates to coordinate with those tracks in Dade County, the Division and the Board had no discretion *379 and their duty in that respect was ministerial. On the other hand, under some circumstances, there may be some discretion with respect to the fixing and apportioning of dates among only those dog tracks located in one county so that certiorari would lie. We hold that mandamus and certiorari were alternative appropriate remedies to attack the actions of the Division and the Board in exceeding their authority to fix and apportion dates for greyhound racing among the several Dade County tracks and the single Broward County track.
Except as modified by this decision, we approve the dissenting opinion of Judge Spector in Biscayne Kennel Club, Inc. v. Board of Business Regulation, et al., supra (case No. 0-38), in which Judge Spector would quash the order allocating the dates being reviewed and require the Division to approve operating dates for each of the three tracks in Dade County, in accordance with the dates chosen by each of such tracks in their respective application. Because of the lapse of time, such a solution would be impractical in that Miami Beach is presently operating and Biscayne would not be in a position to begin its operation within the course of a few days.
Under the circumstances of this case, we feel it appropriate at this time to allocate the dates of the Dade County tracks as nearly in accord with their original request as the circumstances may permit.
When the request for racing dates was made by the Dade County dog tracks there was a conflict between Miami Beach and Biscayne for the September-October days. When this occurred, the Division had discretion in determining that the best interests of the state would be served by allocating these days to Miami Beach. Miami Beach had also requested days during January and February on a noncompetitive basis, but these days were changed by the Division to July and August, 1971, so that Miami Beach would run in competition with Flagler, both of which are Dade County tracks.
Biscayne requested all noncompetitive dates from September through December and were allocated days from January through April. The days so allocated are noncompetitive in Dade County and the Division in the proper exercise of its discretion reallocated the days so that Biscayne would not be in competition with Miami Beach.
As the days are now allocated by the Division there is no Dade County dog race track in operation during the months of November-December. The Division abused its discretion in allocating days during July and August, 1971, to Miami Beach in that such days are in competition with the Flagler track. Miami Beach had requested noncompetitive dates, and there are no dog tracks operating in Dade County during the months of November and December. The Miami Beach track having opened in September would be the logical one to continue its operation through November and December. The dates which should be approved by the Division are as follows:

Track Dates
Miami Beach 9-3-70 through 1-2-71
(18 matinees)
Biscayne 1-4-71 through 5-4-71
(10 matinees)
Flagler 5-5-71 through 9-2-71
(50 matinees)

Hollywood has the option to select any days during the winter racing season during the period extended from November 1, 1970, to and including May 31, 1971, or at any other time during the calendar year for the aggregate number of racing days permitted by law subject to the approval of the Division.
This cause is remanded to the Board with instructions that an order be entered instanter in conformity with the views expressed in this opinion.
Because of the fact that the racing season has already begun and in view of the *380 great public interest in the substantial state tax revenue involved the time for filing a petition for rehearing is shortened to the period of five days from the filing of this opinion.
ERVIN, C.J., and DREW, CARLTON and BOYD, JJ. concur.

ON PETITIONS FOR REHEARING AND CLARIFICATION
PER CURIAM.
The petitions for rehearing separately filed by Investment Corporation of South Florida, Respondent, and the Board of Business Regulation and The Department of Business Regulation, Respondents, all are denied. The petition for leave to file a motion for clarification by the Miami Beach Jockey Club Inc., not a party to this cause, is denied.
The motion to clarify opinion, filed by Investment Corporation of South Florida, is granted. The following paragraph, third from the end of the prior opinion, filed October 20, 1970 is deleted:
"Hollywood has the option to select any days during the winter racing season during the period extended from November 1, 1970, to and including May 31, 1971, or at any other time during the calendar year for the aggregate number of racing days permitted by law subject to the approval of the Division."
To replace the deleted paragraph the following shall be inserted:
"Hollywood shall have the right to operate for the aggregate number of racing days allowed by law and has the option to select any days during the winter racing season, which is currently from November 1, 1970, to and including May 31, 1971, without Division approval, or, subject to the approval of the Division, at any other time during the calendar year; and it can conduct up to the maximum number of matinees on the days of its choice during such race meet, subject to the approval of the Division. All matinee days for any dog track in Dade County shall be subject to approval of the Division, except the number of matinee days for the Dade County tracks for this racing year as previously determined by the Division and approved in our opinion."
It is so ordered.
ERVIN, C.J., and CARLTON, ADKINS and BOYD, JJ., concur.
DREW, J., dissents with opinion.
DREW, Justice (dissenting).
I think we painted with too broad a brush in the judgment entered in this cause. I would grant rehearing, recede from the judgment entered and remand the cause to the Board of Business Regulation and the Department of Business Regulation with power to conduct new hearings, if necessary, and enter such further orders regarding racing dates for the three dog tracks in Dade County, and the single dog track in Broward County, not inconsistent with the views expressed in the majority opinion and particularly with respect to the question of whether the interest of the State will be adversely affected by the allocation of the dates of racing under the order appealed.