ADKINS, Justice.
In this original mandamus proceeding an alternative writ was issued, respondents’ returns and relators’ reply were filed, and relators now seek a peremptory writ. We have jurisdiction, Fla.Const., art. V, § 3(b)(5), F.S.A., Florida Appellate Rule 4.-5(b), 32 F.S.A., and dispense with oral argument. F.A.R. Rule 3.10(e).
The Board of Business Regulation, (referred to as the “Board”), is vested with the responsibility to allocate and approve dates for racing at greyhound racing tracks. The relators, Biscayne Kennel Club, (hereinafter referred to as “Biscayne”), and West Flagler Associates, Ltd., (hereinafter referred to as “Flag-ler”), made application to the Board for annual licenses to conduct dog racing and for the awarding of racing dates for the 1973-1974 racing season.
The Board considered the racing date applications of all Florida dog tracks and awarded the dates requested (105 racing dates, together with matinee dates and charity and scholarship dates) by all tracks except the three Dade County dog tracks and four other dog tracks (Jefferson County Kennel Club, Pensacola Greyhound Racing, Inc., Sarasota Kennel Club, Inc., and Washington County Kennel Club, Inc.) in single track counties. The Board concluded that it was not legally authorized to award dates based upon the traditional September to September racing season as requested by Biscayne and Flagler. This conclusion was based upon a statement of the District Court of Appeal, Third District, in West Flagler Associates, Ltd. v. Board of Business Regulation, 262 So.2d 23 (Fla.App.3d, 1972), which reads as follows :
“We find merit in the position advanced (apparently for the first time) by counsel for Miami Beach, that allocation of dog racing dates on a calendar year basis is improper because the law provides for selections of dates by dog racing permittees (or allocations thereof by the Board when required) to be made on a fiscal year basis.” (p. 25)
“[W]e view as correct the argument that the law calls for selections and allocations of dates for dog racing permit-tees to be on the fiscal year basis, so that in the future the law in that respect should be followed by the Board, but since the question was not presented to the court sufficiently in advance of the allocation of dates with which we are now concerned, the failure of the Board to so proceed with regard to the present allocations should not be disturbed.” (p. 26)
*826 If dates were awarded on -a July 1st through June 30th fiscal year basis commencing with the 1973-1974 racing season, the “fiscal year” for Dade County tracks would be limited to the period from September 5, 1973 through June 30, 1974, as the Board’s award of the “summer” dates to Biscayne for the 1972-1973 traditional September to September racing season encompassed the period of July 1, 1973 through September 4, 1973, making the latter dates unavailable for current allocation.
This Court in West Flagler Associates, Ltd. v. Board of Business Regulation, 26S So.2d 507 (Fla. 1972), denied the petitions of Flagler and Miami Beach Kennel Club, (hereinafter referred to as -the “Beach”), seeking a writ of certiorari to review and quash the above-quoted decision of the District Court of Appeal, Third District. In denying the petitions for writ of certio-rari, the Court said:
“This Court has twice in recent years considered petitions from the West Flag-ler dog track and twice held that it was an abuse of discretion for the state racing authorities not to allocate the summer racing dates to West Flagler rather than to the Biscayne Kennel Club dog track. See West Flagler Associates, Ltd. v. Board of Business Regulation, 241 So.2d 369 (Fla.1970) and West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, 251 So.2d 856 (Fla.1971).
“However, in the case last decided (West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, supra) we indicated that an actual test of the racing performances of the two tracks, West Flagler and Biscayne, appeared to be in order to try to equitably settle the controversy as to which of the two tracks could best perform.” (p. 508)
The statement of the District Court of Appeal in its opinion requiring the allocation of dates to be on the fiscal year basis in the future was not essential to the decision of that court and is without force as precedent. See Pell v. State, 97 Fla. 650, 122 So. 110 (1929); Dade County v. Brigham, 47 So.2d 602 (Fla.1950); 5 F.L.P., Courts, § 54, 8 Fla.Jur., Courts, § 168. Although this obiter dictum conflicted with past decisions of this Court, the constitution, both before and after the 1972 Revision, provided that the Supreme Court “may review” by certiorari any decision of a District Court of Appeal that is in direct conflict with a decision of this Court. Fla.Const., art. V, § 4(2) (1885). When the petition for certiorari in West Flagler Associates, Ltd. v. Board of Business Regulation (Fla., 265 So.2d 507) was denied, this Court did not take jurisdiction because the allocation of the dates was in accordance with previous decisions of the Court. Therefore, this Court did not consider the issue of “fiscal year” in its denial of cer-tiorari.
The Board has a ministerial legal duty to allocate dates among the three Dade County dog tracks on the basis of a full and complete racing season. West Flagler Associates, Ltd. v. Board of Business Regulation, 241 So.2d 369 (Fla.1970). Its duty in that respect is not discretionary and its abrogation of that duty in this instance is based solely on an erroneous interpretation of law that it does not have authority to award dates beyond June 30, 1974 (less than a full and complete racing season).
Relators, Flagler and Biscayne, allege that they are entitled to licenses to operate their pari-mutuel establishments on the dates requested by them, subject only to the Board’s approval for exercise of its discretion as defined by this Court in West Flagler Associates, Ltd. v. Board of Business Regulation, 241 So.2d 369 (Fla.1970) as follows:
“Where several dog tracks in a single county request racing ‘dates’ which are not in conflict, the Board and the Division should allocate these dates to the respective dog tracks, in the absence of a *827 strong showing that the interests of the state are being adversely affected by the allocation of such dates. The factors to be considered are discussed in State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission, 74 So.2d 691 (Fla.1954).” (p.378)
At the Board’s hearing it was established by counsel for all three tracks in Dade County that there was no material changes in the tracks, or their facilities, which would affect the finding of the Board contrary to the finding made in the hearing establishing the dates for the year 1972-1973, wherein the Board determined that the best racing season was the summer period, the next, best, the fall racing season, and the least desirable was the winter season. The exhibits submitted 'by relators reflecting changes in the economic aspects of their respective tracks did not in any way materially alter or vary the basis upon which the Board of Business Regulation made its findings for the year. 1972-1973.
The applications were for the following dates:

Track Dates

Biscayne Sept. 5, 1973 through Nov. 6, 1973; July 3, 1974 through Sept. 4, 1974. (109 days, including 4 charity and scholarship dates and 50 matinees.)
Flagler Nov. 7, 1973 through Jan. 9, 1974; May 1, 1974 through July 2, 1974. (109 days, including 4 charity and scholarship dates and 50 matinees.)
Beach Nov. 1, 1973 through March 1, 1974; (104 days, including 4 charity and scholarship dates and “all matinees to which we may be entitled under rules of the P-M Division.")
There were therefore conflicting requests for racing dates between Biscayne and Beach for the period of November 1, 1973 through November 6, 1973, and between Flagler and Beach for the period of November 7, 1973 through January 9, 1974. None of the tracks requested the time from March 2, 1974 to May 1, 1974, which has normally been the last part of the winter racing season.
If each of the three tracks were granted the dates requested in their applications, there would be two tracks operating in Dade County during the period of November 1, 1973 through January 9, 1974, and no dog racing in Dade County from March 2, 1974 to May 1, 1974. In West Flagler Associates, Ltd. v. Board of Business Regulation, (Fla.1970), supra, this Court dealt with an analogous situation with regard to these three tracks when we said;
“When two or more tracks in the same county request the same ‘dates’ for dog racing, the Division may exercise a greater discretion in determining whether it would be in the best interests of the state to allow such competition or to allocate separate racing dates.” 241 So.2d 369, p. 378.
These guidelines with respect to conflicting and nonconflicting requests for dates in counties with more than one dog track remain applicable today.
The Board specifically denied Biscayne’s and Flagler’s requests for racing dates for the season of September 1973 to September 1974, and determined it would award racing dates for the Dade County dog tracks only for the period September 5, 1973 through June 30, 1974. The Board deferred the actual award in fixing of racing dates for these tracks until a later meeting of the Board so as to enable it to study the situation more thoroughly. It was pointed out that restricting the allocation to the short period ending June 30, 1974, would probably cause the interest of the State to suffer. We are confronted with the main issue of whether the allocation of racing dates should continue on the basis of the racing season (September to September) or the fiscal year (July 1 to June 30)*.
Fla.Stat. § 550.083(1), F.S.A., upon which the District Court of Appeal and the Board relied, reads as follows:
“Owners of valid outstanding permits for dog racing in this state may hold race meetings at any time they choose *828 during the fiscal year for the aggregate number of racing days fixed and permitted by law and subject to the approval of the board of business regulations; provided, that no racing shall be conducted on Sunday.”
Prior to the amendment in 1969, the statute provided that the race meetings could be held at any time “during the calendar year.” In other words, the amendment substituted the words “fiscal year” for “calendar year.” It is appropriate to discuss the reason for the change in the statute.
The Attorney General of Florida, in Opinion 68-100 (Report of Attorney General, 1967-1968, p. 326), advised that the allocation of racing dates within the 90-day minimum and 105-day maximum should comport with the calendar year context within which the dates are established. This was in complete conflict with the allocation based upon the racing season from September to September considering the summer dates, the winter dates and the fall dates.
At the next session of the Legislature, the statute was amended by Florida Laws, Chapter 69-250. The intent of the Legislature is expressed in the title to the act which reads as follows:
“An Act relating to dog racing; amending subsection (1) of section 550.083, Florida Statutes, by providing that dog racing meetings may be held during the year rather than the calendar year; providing an effective date.” (Emphasis supplied)
It has been invariably the practice of the Board and its predecessor, the State Racing Commission, to issue annual licenses and annually fix and allocate the racing dates of the Florida greyhound tracks for the period of September of each year to September of the following year. Such administrative construction of the statute by the agency or body charged with its administration is entitled to great weight and will not be overturned until clearly erroneous. United States Gypsum Company v. Green, 110 So.2d 409 (Fla.1959); State ex rel. Volusia Jai-Alai, Inc. v. Ring, 122 So.2d 4 (Fla.1960); Warnock v. Florida Hotel and Restaurant Commission, 178 So.2d 917 (Fla.App.3d, 1965). This Court in two successive years fixed racing dates for the Dade County tracks on this basis. West Flagler Associates, Ltd. v. Board of Business Regulation, supra (fixed dates of September 3, 1971 through September 1, 1972), and West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, 251 So.2d 856 (Fla.1971), (fixed dates of September 3, 1971 through September 4, 1972).
It is argued that allocating the dates from July 1st to June 30th of each year will simplify the preparation of the annual reports on pari-mutuel wagering. There is no merit to this argument, for any reporting system should comport with the operational methods of the governmental agency. The operation of the State and its Boards should never be changed to the detriment of the State for the sole purpose of complying with a reporting system. This would be a case of the tail wagging the dog.
Considering the intent of the Legislature in enacting the 1969 amendment and giving weight to the previous construction of the statute by the agency charged with its administration, we hold that the Board may award dates for a September to September period as has been done in the past.
Traditionally, the racing season established by the Board- and its predecessor, the State Racing Commission, is in the best interest of the State and comports with our guidelines in State ex rel. West Flagler Kennel Club, Inc. v. Florida Racing Commission, 74 So.2d 691 (Fla.1954). The interpretation of the District Court of Appeal went beyond the requirements of the statute when it construed the term “fiscal year” to specifically relate to the State’s *829 financial fiscal period of July 1st through June 30th.
Relators have a clear legal right to have the Board of Business Regulation perform its clear legal duties under the statutes by awarding dates for a full and complete racing season, allocating the same on the basis of the tracks’ request and the guidelines previously established by this Court. Under ordinary circumstances, whatever is good for the tracks is usually good for the State.
On the basis of the record established before the Board, it appears that all three tracks should be awarded the dates they requested which are not conflicting. With respect to the conflicting requests for dates for the period November 1, 1973 through January 9, 1974, and the period of March 2, 1974 through April 30, 1974 (requested by none of the tracks), the record conclusively established that Biscayne and Flagler would produce significantly more revenue during the November-December period and should be allocated those dates in preference to the Beach.
The record also establishes that it would be better for the State if the Beach were to operate alone during the March-April period, than if it were to operate in competition with Biscayne and Flagler during the November-December period. In accordance with their requests, the following dates should be allocated for the 1973-1974 racing season:

Trade Dates

Biscayne Sept. 5, 1973 through Nov. 6, 1973; July 3, 1974 through Sept. 4, 1974.
Flagler Nov. 7, 1973 through Jan. 9, 1974; May 1, 1974 through July 2, 1974.
For each track this is a total of 109 days, including four charity/scholarship days and SO matinee performances.
The Beach request for the dates of January 10, 1974 through March 1, 1974, should be granted and the Beach should be allocated the period of March 2, 1974 through April 30, 1974. The remainder of the dates requested by the Beach should be denied subject to the Board’s allocation to it of sufficient additional dates prior to January 10, 1974 and/or subsequent to April 30, 1974, to allow it to operate a maximum of 109 days, including four charity/scholarship days and 50 matinee performances, or such lesser number of days as it shall request.
In passing, we point out that the applications of Biscayne and Flagler contain copies of an agreement between them whereby they agreed to request certain racing dates not in conflict with each other. Any agreement, of course, is subject to review by the Board and would not be honored unless it were in the best interest of the State. However, it appears that the tracks are attempting to comply with the wish expressed by Mr. Justice Boyd in West Flagler Associates, Ltd. v. Board of Business Regulation, supra, stated as follows :
“To be consistently fair, we are bound by what we said in our 1971 opinion relative a performance test, to affirm the straight summer racing dates in 1973 to Biscayne Kennel Club, having already allocated the 1972 summer racing dates to West Flagler. Beginning with the allocation of future dates in September 1973, with the test information in hand, the racing authorities can ‘equitably determine and award continuous dates to all Dade tracks’ in future years.
“ . . . It is to be devoutly wished, however, that this Court will in the future be spared of further duty to settle judicially administrative decisions concerning the highly controversial racing dates of South Florida racing tracks.” 265 So.2d 507, p. 509.
The formal issuance of the peremptory writ of mandamus is withheld with the as *830 sumption that the respondents will comply with the views expressed in this opinion.
It is so ordered.
CARLTON, C. J., and McCAIN and DEKLE, JJ., concur.
BOYD, J., dissents with opinion.
ERVIN, J., dissents.
ROBERTS, J., abstains with opinion.