## SOUTHEAST VOLUSIA HOSPITAL DISTRICT, et al. v DEPARTMENT OF INSURANCE, STATE OF FLORIDA, and

## DUVAL COUNTY HOSPITAL AUTHORITY, et al., v DEPARTMENT OF INSURANCE, STATE OF FLORIDA

Case Nos. 85-1650 and 85-1664

State of Florida, Division of Administrative Hearings

October 15, 1985

### APPEARANCES OF COUNSEL

No appearance for petitioners Southeast Volusia Hospital District, et al.

**William C. Owen** and **W. Douglas Hall, Carlton, Fields, Ward, Emmanuel, Smith & Cutler,** for petitioner Duval County Hospital Authority, et al.

**David A. Yon,** Department of Insurance, for respondent Department of Insurance.

**Clay McGonagill,** for intervenor (respondent) Florida Patient's Compensation Fund.

### OPINION

THOMAS C. OLDHAM, Hearing Officer.

A hearing was held in the above-captioned cases on August 22, 1985, at Tallahassee, Florida, before Thomas C. Oldham, Hearing Officer.

## ISSUE PRESENTED

Whether Petitioners, as members of the Florida Patient's Compensation Fund, are liable for additional assessments for Fund Years 1980-81 and 1981-82, as set forth in the Notice of Assessment filed on April 22, 1985.

This proceeding arose as a result of petitions filed by two groups of hospitals contesting a Notice of Assessment issued by the Department of Insurance on April 22, 1985, based upon the certification by the Board of Governors of the Florida Patient's Compensation Fund to the Insurance Commissioner of a deficiency in the amount of money available to pay claims for the 1980-81 and 1981-82 fiscal Fund years. The proposed assessment seeks payment of the alleged deficiency in the total amount of $40,480,556.00 from health care providers who were members of the Fund during the Fund years in question, pursuant to Section 768.54, *Florida Statutes*.

By Order, dated June 11, 1985, the two cases were consolidated into one proceeding, and the Florida Patient's Compensation Fund was granted intervention. Petitioners originally consisted of Southeast Volusia Hospital District and 58 other hospitals (Case No. 85-1650), and Tallahassee Memorial Regional Medical Center and 39 other hospitals (Case No. 85-1664). However, prior to final hearing, a majority of the hospitals from both groups voluntarily dismissed or otherwise withdrew their claims for relief in the proceeding. By Notice of Joinder, dated July 30, 1985, American Hospital, Northridge General Hospital and Pan American Hospital abandoned their claims in Case No. 85-1650 and adopted the Amended Petition in Case No. 85-1664. As a result, the only remaining party of record in Case No. 85-1650 was St. Petersburg Osteopathic Hospital, Inc. which by Order, dated August 13, 1985, was ordered to show cause why it should not be dismissed as a party for failing to advise the Hearing Officer as to its status pursuant to Order dated July 12, 1985. No response to the Order to Show Cause having been received, it will be recommended herein that St. Petersburg Osteopathic Hospital Inc be dismissed as a party in Case No. 85-1650. Further, inasmuch as there are no longer any parties to that case, it will also be recommended for dismissal herein.

By Prehearing Conference Order, dated July 11, 1985, Case No. 85-1664 was restyled to reflect Petitioners as Duval County Hospital Authority, et al. The parties remaining in Case No. 85-1664 at time of

200

hearing were American Hospital of Miami, Inc., Duval County Hospital Authority, Gateway Community Hospital, Hialeah Hospital, Northshore Medical Center, Inc., Northridge General Hospital, Inc., Pan American Hospital, and St. Joseph's Hospital.

By Prehearing Orders, dated July 11 and July 29, 1985, it was determined that questions concerning the setting or adequacy of base fees or additional fees, the statutory "cap" on physician assessments, the statutory cumulative "cap" on maintenance of the Fund per fiscal year, and the effect of payment limitations placed on the Fund by statute, were not properly at issue in this proceeding. However, one issue presented in the Amended Petition in Case No. 85-1664 as to whether the Fund has statutory authority to estimate reserves as a basis for an assessment was deemed to be an issue within the scope of this proceeding. The parties entered into a Prehearing Stipulation (Joint Exhibit 1), which included certain factual matters, subject to relevance, and the unresolved question of law as to whether the Fund and Department may include reserves on known claims other than those resolved by settlement or verdict in calculating the amount needed for assessments.

At the final hearing, the parties stipulated that the Fund certification includes full credit for all previously noticed assessments, whether collected or not. They further stipulated as to the expertise of Charles Portero in claims handling and reserving practices. The parties also stipulated that there was no issue of fact as to the reasonableness of any individual claim reserve existing as of January 31, 1985, or included in the certification, except as to the Von Stetina claim. Testimony of Charles Portero concerning the Von Stetina claim was made confidential and the transcript of such testimony was extracted and submitted under seal pursuant to order of the Hearing Officer. Similarly, separate Findings of Fact and Conclusions of Law submitted by Petitioners as part of their Proposed Recommended Order make reference to the Von Stetina claim and therefore have been treated as confidential material.

At the hearing, Petitioners presented the testimony of Redford A. Cherry, a certified public accountant who was accepted as an expert in accounting. Respondents presented the testimony of Charles Portero, Claims Manager of the Fund, who was accepted as an expert in claims handling and reserving practices. Respondent presented 8 exhibits in evidence, including the deposition of Redford A. Cherry. No exhibits were submitted by Petitioners.

The parties have submitted Proposed Recommended Orders that

have been fully considered. A ruling on each proposed finding of fact has been made in the Appendix to this Recommended Order.

## FINDINGS OF FACT

The following findings of fact are those stipulated to by the parties as set forth in Joint Exhibit 1:

1. The Florida Patient's Compensation Fund (Fund) is established under Chapter 768, *Florida Statutes*, for the purpose of paying claims against member health care providers, including hospitals, in amounts exceeding statutory limits which must be maintained by the health care provider as primary coverage. The Fund is operated subject to the supervision and approval of a Board of Governors which consists of members representing the insurance industry, the legal and medical professions, hospitals and the general public. Annually, each health care provider electing to become a member of the Fund pays certain fees established by statute for deposit into the Fund. Each fiscal year the Fund operates independently of preceding fiscal years and participants are only liable for assessments for claims from years during which they were members of the Fund. If the Fund determines that the amount of money in an account for a given fiscal year is insufficient to satisfy claims, it certifies the amount of the projected excess or insufficiency to the Insurance Commissioner with a request that he levy an assessment against Fund participants for that fiscal year.

2. Petitioner hospitals were members of the Fund during one or more of Fund years 1980-81 and 1981-82.

3. Each month, the Administrative Manager of the Fund follows a prescribed procedure to determine if an assessment is required for a particular Fund year, utilizing what is termed a "restrospective rating plan." The plan provides that assessments will not be levied in any year until the cash available for paying claims in that membership year is down to 50 percent of the loss and expense reserves for all known losses. It further provides that the amount should be sufficient to create enough cash flow to pay known reserved claims for the year showing such deficit. In reviewing the Fund's monthly financial report of January 1, 1985, it was determined that a sufficient deficit existed to warrant the levy of an assessment. Thereafter, a outside audit of the Fund accounts was conducted and presented to the Fund Board for Certification.

4. On March 25, 1985, the Florida Patient's Compensation Fund certified a deficiency to the Department in the following amounts:

202

| | |
|---|---|
| 1980-81 Membership Year | $14,866,718.00 |
| 1981-82 Membership Year | *25,613,838.00* |
| TOTAL | $40,480,556.00 |

This certification was authorized by the Board of Governors of the Florida Compensation Fund on March 19, 1985. An audit substantiating the need for the assessment was performed by Catledge, Sanders and Sanders, certified public accountants.

5. On April 22, 1985, the Department of Insurance issued a Notice of Assessment for Fund years 1980-81 and 1981-82. Notice was published in Volume II, No. 8 at page 1907 of the *Florida Administrative Weekly* on May 3, 1985. The Notice of Assessment announced the Department's intent to levy and authorize the Fund to collect an assessment in the amount certified by the Fund ($40,480,556.00).

6. The Notice of Assessment further provided that the assessment be divided among the various classes of health care providers for each year as follows:

| | | 1980-81 | 1981-82 |
|---|---|---|---|
| (i) | Physicians and Surgeons | | |
| | Class 1 | 0 | 0 |
| | Class 2 | 0 | 0 |
| | Class 3 | 0 | 0 |
| (ii) | Hospitals | $14,754,672 | $25,388,773 |
| (iii) | HMO | 35,621 | 161,102 |
| (iv) | Ambulatory Surgical Centers | 76,425 | 63,963 |
| (v) | Professional Associations | 0 | 0 |

The Department computed the portion of the assessments to be paid by the different classes of health care providers for all years in question based upon the "indicated rate method," modified to allow for the statutory proscription against assessing certain health care providers more than "an amount equal to the fees originally paid by such health care provider." This is the same method utilized in five previous assessment proceedings and specifically approved by the Florida Supreme Court in *Department of Insurance v. Southeast Volusia Hospital District*, 438 So.2d 815, 821 (Fla. 1983). The appropriateness of the procedure has not been placed at issue in this proceeding.

7. The amounts of the assessments sought by the Fund, and described in the Notice of Assessment, were calculated by the Fund by using the following formula:

Total fees paid for the Fund year

+ Investment Income attributable to the Fund year

+ Amounts previously noticed as assessments
− Expenses allocated to that Fund year
− Amount paid on claims for that Fund year
− Amount reserved for all known claims for that Fund year

8. The Fund used the same procedure calculating the amount of this assessment as it used in the first five assessments. The Department used in the same procedure and methodology (indicated rate method) in allocating the assessment among the various classes as it used in the first five assessments. The amount of the assessment is based on the amount needed to pay known claims. This amount needed to pay known claims includes the amount reserved as the estimated loss and expense payments. The Fund follows standard industry reserving practices, as modified in several respects by its particular needs and procedures. Each claim is assigned to a claims supervisor who obtains information concerning the claims incident from the primary insurance carrier. The initial reserve on a claim is based on a variety of factors, including the type of injury, potential damages, liability considerations, geographic location, and the particular attorney for the claimant. After a determination that a reserve is needed on the file, the claims supervisor makes an initial determination of the amount which is referred to the claims manager for approval. Final approval of the posted reserve lies in the hands of the Claims Committee of the Fund. The figure is usually fixed at a sum for which it is believed that the claim could be settled on the potential liability arising from a jury verdict. The necessity of obtaining approval of the Claims Committee for the initial reserve and any subsequent changes creates a certain amount of delay in obtaining such decisions. Changes may be effected in the reserve when injuries are found to be greater than anticipated, or because of the discovery of additional facts affecting potential liability. It is not unusual for a particular claim to be submitted three or four times to the Claims Committee before it is settled.

The following Findings of Fact are based on the evidence presented at the hearing:

9. The parties stipulated to the reasonableness of all established claim reserves reflected in the current assessment sought by the Fund. However, Petitioners questioned the reasonableness of the Fund reserve on the Von Stetina claim which had been included in a previous assessment. Although it is questionable as to whether the adequacy of such a prior reserve should be addressed in a proceeding contesting a subsequent assessment, it is clear that the determination of a deficit necessarily involves deductions or credits for prior reserves in deter-

204

mining a current deficit. In any event, the Von Stetina reserve was established according to the standard practices of the Fund, and no evidence was presented by Petitioners to show that it was unreasonable or otherwise incorrect either on January 31, 1985, when it was determined that a sufficient deficit existed to warrant the levy of an assessment, or at the present time. The Von Stetina case is presently pending in the judicial process and, accordingly, there is no basis at the present time to reduce the previously established reserve. (Stipulation, Testimony of Portero)

10. As heretofore found, the Fund includes a "claim" as a basis for an assessment as soon as a reserve for the claim is established. Petitioners presented the testimony of an accountant who expressed the opinion that the term "claim" as used in pertinent statutes should be restricted to final judgments or settlements against a health care provider in excess of the provider's primary coverage. This "cash basis" methodology would require the entry of a final judgment or settlement before the claim could be considered in determining whether a deficit exists for any particular Fund year. On the other hand, expert testimony from the Fund's Claims Manager shows that the definition of "claim" as used by the Fund is basically in accordance with the generally accepted meaning and usage of that term by the insurance industry. The reserving practices of the Fund are found to constitute a reasonable basis for arriving at the projected amounts required to meet the claims made against the Fund account for a particular fiscal year. (Testimony of Cherry, Portero)

11. It is further found that the present assessment was prepared in accordance with standard procedures, that the amounts proposed to be levied as an assessment for each Fund year in question represent a deficiency in the Fund account for such years, and that the proposed allocations of such amounts among the specified health care providers are appropriate. (Respondent's Exhibits 107, Joint Exhibit 1—Stipulation, Testimony of Portero)

## CONCLUSIONS OF LAW

1. The pertinent language of Section 768.54, *Florida Statutes* (1980 Supp.), as to the criteria for assessments against health care providers was basically the same during the Fund years in question. The 1980 version of Section 768.54(3)(c) provided in part as follows:

If the fund determines that the amount of money in an account for a given fiscal year is in excess of or not sufficient to satisfy the *claims made against the account,* the fund shall certify the amount of the *projected* excess or *insufficiency* to the Insurance Commissioner and

**205**

request the Insurance Commissioner to levy an assessment against or refund to all participants in the fund for that fiscal year, prorated, based on the number of days of participation during the year in question. The Insurance Commissioner shall order such refund to, or levy such assessment against, such participants in amounts that fairly reflect the classifications prescribed above and are sufficient to obtain the *money necessary to meet all claims* for said fiscal year. (Emphasis added.)

Although the above wording does not specifically refer to the question of reserves, Section 768.54 was amended again in 1983 to provide that the assessment shall be in "an amount sufficient to satisfy requirements for known claims, including expenses to satisfy the claims, made against the account for a given fiscal year." The amendment also created the following procedural presumption that is deemed applicable to the instant proceeding:

In any proceeding to challenge the amount of the refund or assessment, it is to be presumed that the amount of refund or assessment requested by the fund is correct, if the fund demonstrates that it has used reasonable claims handling and reserving procedures.

2. As heretofore found, the Fund has demonstrated that it used reasonable claims handling and reserving procedures in arriving at the present assessment, and also showed that the amounts stated therein "fairly reflect" the statutory classifications set forth in Section 768.54, and represent the amount necessary to "meet all claims" for the fiscal years specified in the Notice of Assessment.

3. Petitioners contend that the applicable version of the statute permits the Fund to consider only final judgments or settlements in determining whether there is a deficit sufficient to warrant the levy of an assessment for the Fund years in question, and that the statute provided no authority to base the assessment on reserves established prior to final judgment or settlement. They point to subsection 768.54(3)(e) 3, 4, *Florida Statutes* (1980 Supp.), as authority for the proposition that the term "claim" is restricted to that portion of a final judgment or settlement approved by the Fund in excess of the health care provider's primary insurance coverage. However, a fair reading of subsection (3)(e) does not support Petitioners' contention in this regard. Subsection (3)(e) 2 provides in part as follows:

(e) *Claims procedures.*—

1. Any person may file an action against a participating health

206

care provider for damages covered under the fund, except that the person filing the *claim* shall not recover against the fund unless the fund was named as a defendant in the suit. The fund is not required to actively defend a *claim* until the provisions of § 768.44 are completed or waived, suit is instituted, and fund is named therein. (Emphasis added)

It is concluded that the Fund's practice of considering a "claim" to have been made when a demand has been made against the Fund as evidenced by its receipt of a summons and complaint in a civil action is in accord with the customary practice in the insurance industry and the pertinent provisions of Section 768.54, *Florida Statutes*. It is noted that the language of subsection 768.54(3)(c) requires the Fund to certify the amount of the "projected" insufficiency in an account for a given fiscal year. This language is support for the Fund's practice of including reserves as a basis for assessments because they constitute reasonable estimates or projections of the ultimate exposure on claims. The long-standing practice of the Fund in this regard is entitled to great weight and should not be overturned unless clearly erroneous. *State ex rel. Biscayne Club v. Board of Business Regulation*, 276 So.2d 823, 828 (Fla. 1973), *Pan Am World Airways, Inc. v. Florida Public Service Commission*, 427 So.2d 716 (Fla. 1983).

4. Petitioners claim that the 1983 amendment to Section 768.54(3)(d) which expressly authorized the levy of assessments "in an amount sufficient to satisfy reserve requirements for known claims" shows a legislative intent to accord the statute a meaning different from that accorded to it before the amendment, and that therefore there was no authority to assess based on reserves prior to the statutory amendment. However, as noted by Respondent, the amendment also can indicate an intent to merely clarify the meaning of prior statutory language. *See, Department of Insurance v. Southeast Volusia Hospital District*, 438 SO.2d 815 (Fla. 1983). The latter concept is deemed to be applicable here.

## RECOMMENDATIONS

In view of the foregoing, it is RECOMMENDED that a final order be issued by the Department of Insurance dismissing Case No. 85-1650, and levying assessments in accordance with the Notice of Assessment, dated April 22, 1985, for the Fund years specified therein.

DONE and ENTERED this 15th day of October, 1985, in Tallahassee, Florida.