ADKINS, Justice.
The petitioner, in an original proceeding here, seeks to compel by mandamus the Department of Business Regulation forthwith to cancel and expunge its order revoking the petitioner’s racing dates theretofore established by the State Racing Commission, also known as the Division of PariMutuel Wagering of the Department of Business Regulation, and that the State *675 Racing Commission be required forthwith to issue to petitioner its license to race in accordance with the dates awarded in due season. Petitioner sought as alternative relief a rule nisi in prohibition, or a constitutional writ, both with the same objective. Alternative writ was issued and returns have been filed.
In its return the State Racing Commission alleges that the order of the Department revoking dates approved by the Racing Commission and substituting different racing dates was beyond and contrary to the scope of appellate review exercised by the Department. The Racing Commission does not attempt to show cause why a peremptory writ should not issue.
The Department’s return alleges it “will neither traverse or controvert the facts stated in the record,” but contends that neither the petition or alternative writ states facts upon which relief may be granted.
An amicus curiae brief was filed on behalf of Biscayne Kennel Club, Inc., and West Flagler Associates. This brief was considered by the Court.
By way of uncontroverted factual background, petitioner is the owner of the Hollywood Kennel Club and owns a valid permit to conduct dog-racing in Broward County, Florida, under Ch. 550, Fla.Stat., F.S.A. In the greater Miami area there are four dog tracks authorized to operate; namely, Flagler Kennel Club, Miami Beach Kennel Club, Inc., Biscayne Kennel Club, Inc. and Hollywood Kennel Club, all located within a radius of less than twenty-five miles of each other. In due season petitioner sought an allotment of its 1969-1970 racing days, commencing on November 3, 1969, and ending March 3, 1970, and requested that it be granted 52 non-competitive days and 52 competitive days of racing; applications for dates were made by the other three tracks.
On August 14, 1969, at a meeting by the State Racing Commission, a hearing was held to determine the allotment of dates. The Commission established and declared by formal ruling a policy that it would allocate dates to each of the tracks 52 non-competitive days and 52 competitive days. Biscayne Kennel Club was authorized to start on September 3, 1969 and end its competitive days on November 1, 1969. Other allocations of dates were postponed to September 12, 1969, at which time an allocation in accordance with its ruling of August 14th was assigned. Petitioner alleges that the Commission “then invited the tracks to attempt to adjust between themselves an agreement on selection of days. Hollywood Kennel Club chose to run from November 3, 1969 to March 3, 1970, having non-competitive days until January 1, 1970. Biscayne Kennel Club agreed to run its competitive days against Hollywood Kennel Club from January 1, 1970 until March 3, 1970. Miami Beach Kennel Club and Flagler Kennel Club likewise chose to run between themselves the competitive and noncompetitive days at their tracks.”
Biscayne Kennel Club, pursuant to the order of August 14th, accepted the benefit of the ruling and commenced its operation on September 3, 1969. On September 19, 1969, 36 days after the ruling of August 14, 1969, Biscayne Kennel Club took an appeal to the Department of Business Regulation. Biscayne did not make Hollywood Kennel Club a party to such appeal, although any disturbance of the rulings appealed from would have a vital effect on the property rights of Hollywood Kennel Club. Two days earlier, on September 17, 1969, Flag-ler Kennel Club took an appeal but did not make Hollywood Kennel Club a party thereto, although Hollywood had valuable property rights by virtue of the orders assailed on appeal.
The Department of Business Regulation heard arguments upon the appeals of Biscayne and Flagler but refused to allow participation by Hollywood Kennel Club because it was not a party. Thereafter, on October 23, 1969, just 12 calendar days before the proposed opening by Hollywood *676 Kennel Club, the Department of Business Regulation rendered an order or action on said appeals in which it purports to take from petitioner its non-competitive days and orders petitioner, Hollywood Kennel Club, to operate 104 days competitive with Miami Beach Kennel Club, starting January 1, 1970. This order grants Biscayne and Flagler, each, their 104 days without competition. The legal effect deferred the opening by Hollywood, now scheduled from November 3, 1969, to January 1, 1970. Thus, the Department awarded two favored tracks, each, 104 days of racing without competition, leaving the other two tracks in competition with each other for the remaining days.
Relying on the order of August 14th and the subsequent allocation of non-competitive dates to Hollywood, beginning November 3, 1969, Hollywood has expended and committed substantial sums of money and made other arrangements for opening on November 3, 1969. It has contracted for the dogs to run at its track; it has contracted for all of its opening expenses; it has contracted for its television and radio time, all of which must be procured well in advance of opening. Hollywood also alleges (and this is not controverted) that dog owners have brought their dogs to the track relying upon the stability of the Florida Administrative procedure in setting the dates for racing.
The Department argues that the public and racing industry will be best served if the racing dates were changed. In passing, we might say there is a lack of competent or admissible evidence in the record to sustain the argument or to show any loss of revenue to the state. This argument is based upon the hearsay speculation of an interested attorney representing one of the parties.
The State Racing Commission is organized, authorized and controlled by Ch. 5S0, Fla.Stat, F.S.A. In 1969 the Legislature adopted Ch. 69-106, Laws of Florida, restructuring the State Government, and in Section 16 thereof provided for a Department of Business Regulation, and then in subsection (S) said:
“The state racing commission, created under chapter 550, Florida Statutes, is transferred by a type one (1) transfer to the department of business regulation and shall be assigned to the division of parimutuel wagering.”
The.Type One (1) Transfer mentioned is defined by the Act as:
“A type one (1) transfer is the transferring intact of an existing agency or of an existing agency with certain identifiable programs, activities or functions transferred or abolished so that the agency becomes a unit of a department. Any agency transferred to a department by a type one (1) transfer shall henceforth exercise its powers, duties and functions as prescribed by law subject to review and approval by and under the direct supervision of the head of the department.”
Subsection (3) of Section 16 of the Act provides as follows:
“The board of business regulation is authorized to establish procedures for the administration of each division. In each of the divisions of the department, hearing examiners may be appointed to assist the division directors in exercising the discretionary powers, duties and functions of their divisions. Any interested person may appeal an adverse decision by a division to the board of business regulation.”
Pursuant to such authority, insofar as reviewing the State Racing Commission is involved, the Department adopted with certain exceptions the appellate rules of the District Courts of Florida 1962 Revision as amended through June 19, 1968. None of the exceptions are involved here, but we note that the Department sought to fix the appeal time of 10 days rather than 30 days provided in the appellate rules. By way *677 of caveat we mention that the power of the Department to change the appeal time from 30 days to 10 days is doubtful, but not a necessary question in this case.
Under the posture of this case, it is not necessary for us to decide at this time the scope of the authority of the Board of Business Regulations, or their power, to adopt the rules of appellate procedure. Nor is it necessary to decide whether the Board of Business Regulations has the authority by appellate review to modify or set aside a discretionary order of the Division of pari-mutuel wagering setting racing dates.
In the situation here mandamus is an appropriate remedy available to petitioner. See State of Florida ex rel. Pensacola Greyhound Racing, Inc. v. Lechner et al., Fla., 195 So.2d 206, and related cases. This Court has jurisdiction under Fla. Const, art. V, § 4(2), F.S.A.
Hollywood Kennel Club, having acquired valuable property rights under the orders by the State Racing Commission of August 14, 1969, which rights were directly threatened in the appeal, was an indispensable party to the appeal.
All parties directly and substantially interested in an order sought to be reviewed must be made parties to the appeal.The refusal or failure to do so denies those interested and not made parties due process of law. Harison v. Ocala Building and Loan Association, 52 Fla. 522, 42 So. 696 (1906); Nichols and Johnson v. Frank, 59 Fla. 588, 52 So. 146 (1910); and Headley v. Lasseter, 147 So.2d 154 (Fla.Apps. 1962).
It is stated in Tibbetts v. Olson, 91 Fla. 824, 108 So. 679 (1926),
“The Constitution is designed to prescribe and limit governmental powers and to secure individual rights against unlawful invasion by public officers or by private parties. The courts are required to adjudicate rights ‘by due course of law,’ the essence of which is that, by appropriate procedure, duly prescribed, fair notice and a reasonable opportunity to be heard shall be given to interested parties before judgment or decree is rendered; and statutory regulations that do not afford reasonable notice and hearing before adjudication or before liability is established operate to deprive persons of organic rights without due process of law, and are inoperative.”
The order of the Department operates to deprive Hollywood of organic rights without due process of law and is therefore inoperative.
All parties in favor of whom the order was rendered and who would be affected by its reversal must be made appellees in the appeal. See Am.Jur.2d, § 278. The interest of Hollywood in the controversy was of such nature that a final determination could not be rendered between the other parties to the controversy without radically and injuriously affecting that interest. Hollywood was an indispensable party to the appeal and the Department could not assume jurisdiction over the matter in controversy in the absence of such indispensable party. See 39 Am.Jur., Parties, § 5.
The Court in Headley v. Lasseter, 147 So.2d 154 (Fla.App. 3d Dist.1962), said:
“In a proceeding to review a decision or order of an administrative agency, the question of who may or must be joined as parties is, in the absence of statutory provision as to parties, governed by the rules applicable to parties in civil actions generally. 73 C.J.S. Public Administrative Bodies & Procedure § 178, p. 523. Cf. Dade County News Dealers Supply Co. v. Florida R. R. & Public Utilities Commission, Fla., 1950, 48 So.2d 89.
“With reference to the need to join necessary or indispensable parties in the trial court as well as on appeal, the Supreme Court of Florida in the case of McAdoo v. Moses, 101 Fla. 936, 132 So.
*678 638, quoting material from two earlier cases, said:
“ ‘In Robinson et al. v. Howe et al., 35 Fla. 73, 17 So. 368, this court held:
“ ‘ “The general rule in equity is that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, must be made parties, either as complainants or defendants, so that a complete decree may be made binding upon all parties.
“ ‘ “The court cannot adjudicate directly upon the rights of necessary and indispensable parties, without having them actually or constructively before it, and the failure to raise the objection of the absence of such parties by demurrer or answer is not a waiver of the right to make such objection before final decree, or even on appeal.”
“ ‘In Rawls v. Tallahassee Hotel Co., 43 Fla. 288, 31 So. 237, this court held:
“ ‘ “A decree rendered in the absence of an indispensable party will be reversed, and an objection of this character can be urged for the first time in the appellate court, or be considered by the court of its own motion.”
“ ‘See, also, Yager v. North & South Alafia River Phosphate Co. et al., 82 Fla. 38, 89 So. 3407 ”
Respondents having failed to show a lawful reason why the petition for mandamus should not be granted, the motion for peremptory writ is granted, effective immediately, commanding the State Racing Commission, also known as the Division of Pari-Mutuel Wagering, instanter to issue petitioner its license to race non-competitively in accordance with the dates awarded by the State Racing Commission, which authorized opening on November 3, 1969, and to fully reinstate the actions of the State Racing Commission in the awarding of racing dates for the 1969-1970 racing season.
Because of the late action by the Department of Business Regulation and the short intervening time between its action and the opening date previously allotted to Hollywood Kennel Club, and in view of the great public interest in the substantial state tax revenue involved, this order is made effective immediately, and a petition for rehearing will not be allowed.
It is so ordered.
ROBERTS, DREW, THORNAL and BOYD, JJ., concur.
CARLTON, J., concurs specially with opinion.
ERVIN, C. J., dissents with opinion.