JOHNSON, Chief Judge.
This matter is before us on petition for a writ of certiorari to review the order and opinion of the Board of Business Regulations affirming the decision of the Division of Pari-Mutuel Wagering allocating and fixing the racing dates for the four dog race tracks located in the greater Miami area, entered August 6, 1970. Briefs have been filed and oral arguments heard.
The four tracks involved in this proceeding shall be referred to as: “Biscayne”, “Flagler”, “Hollywood” and “Miami Beach”. “Hollywood” is located about a mile and a half outside of Dade County, over in Broward County, but within approximately nine miles of the nearest track in Dade County.
Pursuant to statute each of the four tracks timely applied to the Division for the allocation to each of the tracks of the days of racing to be granted each said track for the 1970-71 season, which begins September 3, 1970. Hollywood and Miami Beach each designated the dates it desired, but added the request that the dates for the four tracks be so allocated that each track would run 52 days opposed by one of the other three tracks and 52 days unopposed by either of the other three tracks, and suggested that this 52-52 plan be made a regular method of allocation for the future, with rotation between the tracks so as to be fair to each.
Biscayne requested certain days with the added request that the same was for non-competitive greyhound dates. Flag-ler requested its days and dates without mention of competitive or non-competitive.
Hearings were held, pursuant to notice, by the Division, at which each of the parties were permitted to submit sworn testimony evidence and argument of counsel in support of their respective requests. Thereafter, the Division allocated and awarded the following dates to the four tracks based on a 52-52 plan, to wit:
“Track Dates Opposed or Days Unopposed
Miami Beach 9-3-70 thru 11-3-70 52 Unopposed
7-5-71 thru 9-2-71 (18 matinees) 52 Opposed by Flagler
Hollywood 11-4-70 thru 1-2-71 52 Unopposed
1-4-71 thru 3-4-71 (18 matinees) 52 Opposed by Biscayne
Biscayne 1-4-71 thru 3-4-71 52 Opposed by Hollywood
3-5-71 thru 5-4-71 (10 matinees) 52 Unopposed
Flagler 5-5-71 thru 7-3-71 52 Unopposed
7-5-71 thru 9-2-71 (50 matinees)” 52 Opposed by Miami Beach
*55 The decision of the Division was appealed by Biscayne and Flagler to the Board, at which time the parties were again heard, by counsel. The Board determined to sit as an appellate reviewing board in the appeal and so stated in its order of August 6, 1970, affirming the action of 'the Division which is under review here.
The prayer of the petitioner contains several alternatives which may be briefly summarized by saying that Biscayne wants the order of the Board affirming the decision of the Division set aside, as well as the decision of the Division allocating the dates, and for this court to either set new dates or direct the Board or Division to do so, or for the Board to reinstate the appeal of petitioner and Flagler and hold de novo hearings for the purpose of allocating new dates using as the prime factor for such allocation the tax revenue to the State of Florida.
Flagler has heretofore filed in this court its petition for a writ of mandamus and for a writ of prohibition in which the same bone of contention was raised. By order of this court handed down simultaneously with this opinion, we have denied Flagler’s petition.[1] However, since factual matters involved are so closely related, it has been requested by some of the parties to these proceedings that their briefs filed in the mandamus proceedings be also used in this proceedings, which we find to be a reasonable request and helpful to us.
The petitioner has raised for consideration three points involved, which we believe can be restated in the following language: (1) Whether the Board was legally correct in determining to sit strictly as an appellate review body, basing its decision exclusively on the record compiled before the Division, and (2) Whether the Division was in error in taking into consideration the Hollywood track in apportioning the dates among the three Dade county tracks, and (3) Whether it was lawful for the Division to use the 52-52 plan, which included Hollywood.
Under F.S. § 20.16, F.S.A., there is created a department of business regulation. The head of the department of business regulation is the Board of Business Regulation composed of five members. The department is divided into several divisions, one of which is the Division of Pari-Mutuel Wagering. Under the governmental reorganization as provided in F.S. Chapter 20, F.S.A., the transfer of the former State Racing Commission to the Division of Pari-Mutuel Wagering, a division of the Board of Business Regulation, is designated as a type one transfer, F.S. § 20.06(1), F.S.A. wherein it is provided that such agency shall henceforth “exercise its powers, duties, and functions as prescribed by law, subject to review and approval by, and under the direct supervision of, the head of the department.”
We cannot read into the language of the statute quoted supra, the right, the duty or the authority for the Board, as “the head of the department” to completely usurp and assume the full powers and functions of the Division of Pari-Mutuel Wagering. The right to review is given. The power to fix rules and regulations governing the Division are also vested in the Board by such statute (F.S. § 20.05(1), F.S.A.).
Under the applicable statute the Board was legally correct in determining that it would sit as a reviewing body reviewing the record of the proceedings had before the Division. We also are of the opinion, and so hold, that the Board did not abuse its authority in determining that the evidence adduced before the Division, as shown by the record on appeal to it, was competent and sufficient to support the decision of the Division, although the same contained some conflict. The *56 statement by the Board that it would not substitute its judgment for that of the Division did not imply that it did not have the authority to reverse if it, the Board, felt that the evidence was not competent or sufficient. Therefore, we must disagree with the petitioner’s claim under its point one.
We next come to point two: Whether the Division was in error in taking into consideration Hollywood in apportioning the dates for the three Dade County tracks.
The petitioner argues in its brief that the 52-52 plan “foisted” upon the State of Florida in 1969 and again in 1970 has caused and will continue to cause a loss of tax revenue to the State; that it will deprive the residents of Dade County and its visitors an opportunity to attend a dog track in their community during a substantial portion of each year. As to the loss of tax revenue, it has been shown that at the 1969 hearing on allocation of dates, at which the 52-52 plan was originally adopted, Flagler offered as evidence some projections and prognostications as to how much the pari-mutuel play and tax revenue would be if the dates requested by Biscayne and Flagler were awarded to them, as opposed to the loss to be suffered under the 52-52 plan. At the date of the 1970 hearing, the fallacy of the 1969 projections as to revenue as well as to total play was exploded when it was shown by the records of the Division that there had been an increase in play and tax revenue under the 52-52 plan of many millions of dollars above that originally projected even for Flagler and Biscayne. This same argument by the same party, a partner in Flagler, with like projections, was offered to the Division at its hearings on the 1970 date application, but was rejected by the Division as not being competent controlling evidence in rendering its decision allocating the dates.
The petitioner also raises as a statutory prohibition against the action of the Division, the provisions of F.S. § 550.02(1), F.S.A. which reads as follows:
“(1) Fix and set the dates for racing in any county where there are one or more horse tracks or one or more dog tracks seeking to race and holding ratified permits upon which any track can operate in any county, apportioning such dates to the several tracks in such counties as provided by law; provided, however, that where only one licensed dog track is located in a county, such track may operate ninety days during the racing season at the option of said dog track; * * * ”
This Act was passed in 1931, at which time the racing season was fixed as being limited to run from December 1 each year to April 10 of each following year. Over the years, new or additional statutes have been passed by the Legislature so that now we have authorized racing during the entire calendar year. Most of the later statutes do not carry repealing clauses as to the older statutes, and some even state that such statutes are supplemental or cumulative. F.S. § 550.083, F.S.A., passed in 1961, and amended in 1969, now provides for granting permits to race at any time the holder chooses within the fiscal year, “for the aggregate number of racing days fixed and permitted by law and subject to the approval of the state racing commission. * * * ”
Again in 1965, the Legislature passed what is now F.S. § 550.291, F.S.A., which authorizes the state racing commission to annually allocate to the owners of valid outstanding permits — for greyhound racing, not less than 90 days and not more than the number of days allocated or permitted jai alai permittees, plus scholarship and charity days. There does not appear to be any particular restrictions imposed upon the racing commission, which is now the Division of Pari-Mutuel Wagering. A large number of cases are cited by petitioner in support of its contention and especially in support of the proposition that the Division cannot legally al *57 locate dates for a track where there is only one track in the county, as is the case of Hollywood. We might pause to point out here that the petitioner seems to take inconsistent position on this point. It so happens that the Division did in fact give Hollywood the exact dates it requested, but, even if it had not done so, we question the petitioner’s right to raise that question.
The decisions cited by petitioner were rendered prior to the statutory changes as shown in F.S. §§ 550.291 and 550.083, F.S.A., and therefore of no persuasive value. The latest case in which this question arose, also involving the 52-52 plan was State of Florida ex rel. Investment Corporation of South Florida v. Board of Business Regulation of the State of Florida et al., 227 So.2d 674 (Fla.1969). In this case, the Division had allocated racing dates to the four tracks involved here, for the 1969-1970 season in which allocation was made to Hollywood, also, under the plan now known as the 52-52 plan. Biscayne and Flagler appealed the decision of the Division to the Board of Business Regulation, but did not make Hollywood a party to such appeal. The Board reversed the decision of the Division and fixed new dates for Biscayne and Flagler, giving them the choice dates, unopposed by either of the other dog tracks and gave Hollywood and Miami Beach new dates, racing in competition or opposition to each other. Hollywood filed an original petition in mandamus in the Supreme Court of Florida seeking to compel the Board of Business Regulation to cancel its order revoking the allotted racing dates set by the Division for Hollywood. The Department (the Board) argued in said case that the public and racing industry would be best served if the racing dates were changed. The court said, however, that in passing, “there was a lack of competent or admissible evidence in the record to sustain the argument or to show any loss of revenue to the state. This argument is based upon the hearsay speculation of an interested attorney representing one of the parties.” We point out here that the same type of evidence i.e. projection — was offered to the Division and was before the Board in the record on appeal. The Supreme Court then held that because Hollywood had an organic property right of which it was being deprived without due process, and being an indispensable party to the appeal, the Department could not assume jurisdiction over the matter in controversy in the absence of such indispensable party, citing 39 Am.Jur. Parties p. 5. The Court did not, however, stop with holding the order of the Department reversing the Division and fixing new dates ineffective, but ordered the State Racing Commission, also known as the Division of Pari-Mutuel Wagering, to instanter issue to Hollywood its license to race “non-competitively” in accordance with the dates awarded by the Racing Commission originally, and to fully reinstate the action of the Racing Commission in awarding of the racing dates for the 1969-70 racing season. The court had before it for consideration the 52-52 plan or formula and by its action in issuing the writ in mandamus necessarily had to find that said plan which included Hollywood along with the three Dade County tracks was not an illegal exercise of the authority or discretion of the Racing Commission. Therefore, this latest expression of our Supreme Court seems to dispel any merit to petitioner’s contention that to consider Hollywood with the other tracks by the Division was error. We are aware that other decisions have dealt with and considered the “area” as distinguished from the “county unit”, in fixing dates and regulations for the four tracks in what has been termed by the Supreme Court as the “greater Miami area.” Therefore we cannot find any basis for the relief prayed for by the petitioner under this portion of its complaint as set forth in its petition and expounded in its brief.
The third point raised is the right of the Division to use the 52-52 plan under which it is argued that the Statute directing the Racing Commission, now the Division, to fix and apportion dates to the *58 several tracks in a fair and impartial manner, or as amended, “as provided by law” (F.S. § SS0.02, F.S.A.) mandatorily required the Division in apportioning the dates to consider and base its decision upon important factors already judicially recognized, consistent with fairness and impartiality.
In the case sub judice, we have held supra, that under the provisions of F.S. Chapter 20, F.S.A. the Board of Business Regulation was legally authorized to sit as a reviewing body in an appellate procedure such as was enlisted here, and that the acts of the Division were subject to review and approval by the Board (F.S. § 20.16(5) F.S.A.). In this case the Board made a determination that the Division’s decision in fixing the dates for racing was supported by competent evidence.
Under the original statute creating the State Racing Commission in 1931, very little flexibility in the authority of the Commission or in the privileges of the tracks was afforded. It is apparent that in the original enactment of F.S. Chapter 550, F.S.A., the Legislature was somewhat skeptical of the ultimate outcome of this bold new venture — that of legalizing parimutuel gambling in the State, and therefore attempted to remove any chance abuses by definitely fixing the rights and duties of the Commission. As the fear of any serious disastrous results arising from this industry subsided, the Legislature became less skeptical and, by a series of acts, purporting in some instance to be amendments and in more instances as novel additions to Chapter 550, there was a general relaxing of the rigid straitjacket in which the Racing Commission was placed originally, and by force of necessity for the Commission to be able to comply with the later amendments to Chapter 550, especially with reference to the allocation of racing dates, the Commission became possessed of discretionary powers, to be used, subject to review as provided by law. When the State Racing Commission, under the governmental reorganization became the Division of PariMutuel Wagering of the Department of Business Regulations, these discretionary powers, duties and functions were carried with the transfer, with the further provision however, of being subject to review and approval by the Board.
The Supreme Court of Florida has recognized that the State Racing Commission was exercising discretionary powers in allocating racing dates, in the case of State ex rel. West Flagler Kennel Club v. Florida State Racing Commission, 74 So.2d 691 (Fla.1954) wherein the Court said:
“The ultimate question raised by the pleadings is whether or not the State Racing Commission abused its discretion in allocating racing dates to the dog tracks in Dade County.”
In this same case, the Supreme Court detailed the factors to be taken into consideration, by the Racing Commission in allocating and fixing the racing dates, which are directly related to the exercise of their discretion therein, when it said:
“ * * * but considered in the light of all the factors that respondents were required to consider in fixing racing dates, that is to say the interest of the track owner, the interest of the State, the good will, the quality of dogs, track facilities, geography, skill in management, and others, the results reveal nothing to show discrimination.”
The last case cited, supra, was in a mandamus proceeding, but the enunciation of the law as applied to facts of that case, is applicable to the facts of this case, although this proceeding is in petition for certiorari to review the order complained of. The language used by the court in said case was that the “relator has failed to show any discrimination or that fairness and impartiality were not observed by respondents when they apportioned racing dates. * * * ” The court further stated as to the 1947 amendment to F.S. section 550.02(1), F.S.A., being Chapter 24348, Acts of 1947,
*59 “ * * * We do not hold that the latter amendment had the effect of removing the requirement that racing dates be fixed in a fair and impartial manner but we do hold that it enlarged the discretion of the State Racing Commission and authorized it to consider not only the interest of those operating race tracks, but the interest of the State as well when it fixed racing dates. * * * ” (Emphasis added.)
So, 'we find ourselves in this case confronted with a discretionary function of the Division, in which the Board sitting in review thereof finds and determines that there was sufficient competent evidence before the Division to support its decision therein; and confronted with a petition for review by this court of the action of the Board and the Division. We have answered hereinabove in what we think is a proper disposition of those questions listed as one and two, and now we must determine from the record before us, which contains the entire proceedings before the Division and the Board, whether there has been an abuse of discretion by the Division in fixing and allocating racing dates, and whether the action of the Division and the appellate action of the Board met all the essential requirements of law to sustain the action and support the order under review.
In State ex rel. West Flagler Kennel Club v. Florida State Racing Commission, supra, the court was dealing with the same four race tracks involved in the case sub judice. In that case the court pointed out that the dates allocated were not too different from former dates, and that although competitive, there had been a consistent increase in both pari-mutuel play and state revenue, although a difference in increases as between tracks. We have almost the identical set of facts in this case as shown from the record and as said by the Supreme Court in the West Flagler case, supra, we feel and so hold that the record, the pleadings and briefs not only fail to show any discrimination against the petitioner, but conclusively shows that the Division did not commit an abuse of its discretion in allocating the dates under the 52-52 plan, and that the Board exercised its proper authority and jurisdiction in entering its order affirming the decision of the Division. The petition should therefore be denied.
West Flagler has filed its brief as a respondent in this case. It complains of the same thing that Biscayne does — i.e. that the action of the Division and of the Board should be set aside or reversed, but in the brief filed here, Flagler insists that the proper remedy was by mandamus or prohibition, as claimed by it in its petition filed in this court as case number 0-22, 238 So.2d 677. It further states, however, that if this court should hold that its mandamus or prohibition were not proper, the same relief requested by Biscayne should be granted Flagler based upon the merits which are the same in both cases.
We think the case of DeGroot v. Sheffield, 95 So.2d 912 (Fla.1957) is applicable to refute Flagler’s contention that certiorari is not the proper remedy. In that case the court said:
“ * * * certiorari is a discretionary writ bringing up for review by an appellate court the record of an inferior tribunal or agency in a judicial or quasi-judicial proceeding. The writ is available to obtain review in such situations when no other method of appeal is available. (Citation). In certiorari the reviewing court will not undertake to reweigh or evaluate the evidence presented before the tribunal or agency whose order is under examination. The appellate court merely examines the record made below to determine whether the lower tribunal had before it competent substantial evidence to support its findings and judgment which also must accord with the essential requirements of the law. It is clear that cer-tiorari is in the nature of an appellate *60 process. It is a method of obtaining review, as contrasted to a collateral assault” (Emphasis added).
Also cited by Flagler in its brief is West Flagler Amusement Co. v. State Racing Commission, 122 Fla. 227, 165 So. 64 (1935) as authority for the proposition that the acts of the Racing Commission are devoid of any judicial attributes and therefore certiorari is not an available remedy. This case was decided in 1935 and as pointed out by the court in later cases, the changes in the statute have resulted in changes in the powers, duties and functions of the Racing Commission.
It is further contended in Flagler’s brief that the Board misconceived its scope of review and thereby failed to accord the appellants, Biscayne and Flagler, the essential requirements of law. Also it raises the same contention that the Division could not allocate racing dates on a two-county basis. We think we have adequately answered these questions adversely to Flagler’s contentions by this opinion supra, and therefore hold that Flagler is in the same posture as Biscayne and that neither is entitled to the relief sought.
The petition is therefore dismissed.
WIGGINTON, J., concurs.
SPECTOR, J., dissents.

. Our Case No. O-22-State of Florida, on the relation of West Flagler Associates, Ltd., etc. v. Board of Business Regulation of the State of Florida et al., Fla.App., 238 So.2d 677.