908 So.2d 530 (2005)
W. Lawrence LeNEVE, Appellant,
v.
VIA SOUTH FLORIDA, L.L.C., a Delaware limited liability company, Indiantown Realty Partners, Limited Partnership, a Florida limited partnership by and through Eastern Alliance, L.L.C., its sole general partner, and L & G GP, Inc., a Florida corporation, Appellees.
No. 4D03-1318.
District Court of Appeal of Florida, Fourth District.
July 27, 2005.
Rehearing Denied September 2, 2005.
*532 R. Stephen Ottewell of Law Office of R. Stephen Ottewell, P.A., Boca Raton, for appellant.
L. Louis Mrachek, Alan B. Rose, and Jennilynn E. Lawrence of Page, Mrachek, Fitzgerald & Rose, P.A., West Palm Beach, for appellees Via South Florida, L.L.C., a Delaware limited liability company, and Indiantown Realty Partners, Limited Partnership, a Florida limited partnership by and through Eastern Alliance, L.L.C., its sole general partner.
GROSS, J.
This is an appeal from an order confirming an arbitration award. Via South Florida, L.L.C. and Indiantown Realty Partners, L.P. acquired a multimillion dollar award against W. Lawrence LeNeve in an arbitration proceeding. When Via South and Indiantown Realty Partners moved to confirm the award in the circuit court, LeNeve moved to vacate it. The court confirmed the award and entered judgment against LeNeve. We affirm, holding that LeNeve waived his right to litigate partnership claims in the circuit court.
Via South and L & G GP, Inc. created the limited partnership, Indiantown Realty Partners, to conduct real estate transactions. A written agreement contained the terms of the partnership. As the only limited partner, Via South contributed 99% of the financing in return for a 99% share in the profits. L & G, the general partner, contributed 1% of the financing and agreed to conduct the day-to-day management of Indiantown Realty Partners in return for 1% of the profits.
LeNeve controlled L & G as its president and director; however, in his individual capacity, he was neither a partner of Indiantown Realty Partners nor a signatory to the partnership agreement.
After the partnership began operating, Via South filed suit against Indiantown Realty Partners and L & G seeking: (1) a declaration that L & G had breached the partnership agreement and (2) an injunction removing L & G as the general partner. LeNeve was not named as a party to that lawsuit.
Indiantown Realty Partners and L & G responded to Via South's suit by filing, among other things, a motion to compel arbitration based on section 14.1 of the partnership agreement, which provided for arbitration of "[a]ll claims, disputes, and other matters in question among the Partners arising out of or relating to this Agreement or breach thereof." That part of section 14.1 pertinent to this appeal provided:
No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder, or in any other manner, any additional person not a party to this Agreement or an Interest Holder except by written consent containing a specific reference to this Agreement and signed by the parties hereto in dispute and any other person sought to be joined. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein or with any person not named or described therein. This agreement to arbitration and any agreement to arbitration with an additional person or persons duly consented to by the parties to this Agreement shall be specifically enforceable under the prevailing arbitration law.
*533 Before the circuit court ruled on the motion to compel arbitration, Via South filed a notice of intent to arbitrate and a statement of claim against Indiantown Realty Partners and L & G with the American Arbitration Association. The circuit court later stayed Via South's suit pending AAA arbitration.
At the commencement of the arbitration, Indiantown Realty Partners, L & G, and LeNeve were all represented by the same attorney. On behalf of her clients, that attorney responded to Via South's statement of claim by filing a motion to dismiss, asserting affirmative defenses, and raising a number of counterclaims. Although LeNeve was not named as a party in Via South's initial statement of claim, LeNeve authorized his attorney to include him as a counter-petitioner along with the partnership and L & G in the counterclaims.
Once the panel realized that a non-party to the partnership agreement had been included as a plaintiff in the counterclaims, it contacted the parties and asked them to respond to two questions:
First, the Panel would like to know if any party that is not a signatory to a contract which contains an arbitration provision would like to waive such defense and join the arbitration proceedings in order to more fully effectuate the goals and purposes of this arbitration?
If the answer to the preceding question is no, then the Panel would like the following issue briefed . . .: Can a party be compelled to arbitrate even though they have not signed an arbitration provision, and if so, under what conditions?
LeNeve's attorney responded by letter to the panel's inquiry. She wrote that LeNeve was affirmatively waiving his right to "submit his claims" in circuit court. The letter stated:
Regarding the additional party petitioner in the Counterclaim, who is not a signatory to the governing arbitration clause (i.e., Mr. LeNeve), consider this confirmation of Mr. LeNeve's waiver of his right to submit his claims in an alternative forum, in order to accomplish the goals and purposes of arbitration.[1]
After receiving the letter, the panel entered an order recognizing LeNeve as a party to the arbitration based on his "consent[] to such jurisdiction." The parties never executed a formal document expressly consenting to LeNeve's joinder as required by section 14.1 of the partnership agreement.
The same day the panel accepted jurisdiction over LeNeve, Via South amended its statement of claim to include causes of action against LeNeve, individually. Among those claims was that LeNeve engaged in unauthorized transactions through L & G that provided LeNeve with secret commissions and loan proceeds. The prayer for relief sought (among other things) "appropriate money damages from L & G and LeNeve." Thus, as of February, 2001, claims for affirmative relief were pending against LeNeve in the arbitration proceeding.
Following LeNeve's inclusion in the arbitration, the parties aggressively litigated their respective claims. Via South filed numerous documents referencing its claims against LeNeve and sought discovery on those claims. LeNeve took no action challenging the panel's jurisdiction to grant relief against him.
*534 In April, 2001, the arbitration panel held a five-day hearing on whether L & G should be removed as the general partner of Indiantown Realty Partners based on its misconduct. In May, 2001, the panel ruled in Via South's favor, ordering the removal of L & G and naming a Via South affiliate as the new general partner. That order essentially resolved the liability issues of the case in Via South's favor; the remaining issues related primarily to damages. A few days later, Indiantown Realty Partners filed for Chapter 11 bankruptcy.
In July, 2001, Via South amended its statement of claim to realign the parties and specify "which claims remain[ed] pending against which parties." Because a Via South affiliate had become the general partner, Indiantown Realty Partners became a claimant (arbitration plaintiff) in the proceeding and was no longer a respondent (arbitration defendant). However, L & G and LeNeve remained as respondents and Via South's claims against those parties continued.
In August, 2001, LeNeve objected for the first time to the panel's jurisdiction to grant Via South relief against him individually, on the theory that he had waived his rights only for the claims brought by him and not "for claims made against [him]." LeNeve also attempted to withdraw his counterclaims and discontinue his participation in the arbitration.
The panel overruled LeNeve's jurisdictional objections and gave him the opportunity to reconsider withdrawal of his counterclaims. Nevertheless, LeNeve refused to further participate in the arbitration and the other parties proceeded in his absence. After an evidentiary hearing on damages, the panel entered its final award granting Via South and Indiantown Realty Partners (among other things) $4.2 million in compensatory damages to be paid jointly and severally by L & G and LeNeve.
Via South and Indiantown Realty Partners moved to confirm their award. LeNeve responded with a motion to vacate the award. The circuit court consolidated the motions. After an evidentiary hearing, the court confirmed the award and entered judgment against LeNeve.
To vacate an arbitration award, a party must establish one of the five statutory grounds set forth in section 682.13(1)(a)-(e), Florida Statutes (2002). See Commc'ns Workers of Am. v. Indian River County Sch. Bd., 888 So.2d 96, 99 (Fla. 4th DCA 2004). Where the party moving to vacate fails to prove one of the five statutory grounds, "neither a circuit court nor a district court of appeal has the authority to overturn the award." Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1328 (Fla.1989). Appellate review of orders granting or denying a motion to vacate an arbitration award are governed by "the same standards as in any ordinary case, whereby findings of fact are reviewed under a competent and substantial evidence standard and legal questions are reviewed de novo." See Boyhan v. Maguire, 693 So.2d 659, 662 (Fla. 4th DCA 1997).
LeNeve sought to vacate the award under section 682.13(1)(c), which provides that a "court shall vacate an award when . . . [t]he arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers." An arbitrator exceeds her power when she "`goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration.'" Commc'ns Workers of Am., 888 So.2d at 99 (quoting Schnurmacher, 542 So.2d at 1329). However, unlike a court's subject matter jurisdiction which cannot be conferred by the parties, an arbitrator's jurisdiction *535 derives from the parties' agreement and can broaden during the course of arbitration "by waiver, failure to object and consent." See City of West Palm Beach v. Palm Beach County Police Benev. Ass'n, 387 So.2d 533, 534 (Fla. 4th DCA 1980).
The trial court found that LeNeve "waived his right to litigate in court." Competent substantial evidence supports this conclusion.
To determine whether a "waiver" has occurred in connection with an arbitration, Florida courts apply the "general definition of waiver." See Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005). Waiver is "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." Id. Breaking down waiver into elements, this court has recognized that three circumstances give rise to a waiver: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right. E.g., Capital Bank v. Needle, 596 So.2d 1134, 1138 (Fla. 4th DCA 1992). Proof of these elements "may be express, or implied from conduct or acts that lead a party to believe a right has been waived." See Taylor v. Kenco Chem. & Mfg. Corp., 465 So.2d 581, 587 (Fla. 1st DCA 1985).
In arbitration cases, the waiver issue typically arises where a party to an arbitration agreement actively litigates in circuit court and fails to timely demand arbitration. The issue in those cases is whether the party's conduct was sufficient to waive its right to later compel arbitration. A number of Florida courts have held that an implied waiver occurs under those facts because active participation in a circuit court lawsuit is "generally presumed to be inconsistent with the intent to arbitrate." E.g., Doctors Assocs., Inc. v. Thomas, 898 So.2d 159, 162 (Fla. 4th DCA 2005).
This case is different. The issue here is whether a non-signatory to an arbitration agreement waived his right to litigate in circuit court by actively participating in an arbitration. Nevertheless, "[j]ust as a party who has a right to arbitration can waive that right by participating in a judicial proceeding, so can a party having a right to a judicial determination of an arbitrable issue waive that right by participating in arbitration." Victor v. Dean Witter Reynolds, Inc., 606 So.2d 681, 686 (Fla. 5th DCA 1992); Palm Beach County Police Benev. Ass'n, 387 So.2d at 534; Harris v. Haught, 435 So.2d 926, 928 (Fla. 1st DCA 1983).
Here, the arbitration panel had jurisdiction to award damages against LeNeve. LeNeve authorized his attorney to pursue his individual claims in the arbitration proceeding. The panel gave LeNeve the chance to opt out of the arbitration, but he chose not to do so. While LeNeve had the right to litigate partnership-related claims in circuit court, he expressed his intent to waive that right through his letter to the panel "confirm[ing his] waiver of his right to submit his claims in an alternative forum." Even assuming, as LeNeve argues, that the letter waiver extended only to his own counterclaims against Via South, his active participation in the arbitration for approximately six months while Via South prosecuted claims against him constituted an implied waiver of his remaining circuit court rights.
Finally, we reject LeNeve's claim that the arbitration was void because Indiantown Realty Partnership failed to obtain relief from the automatic stay provision of 11 U.S.C. § 362(a)(1). The stay had no effect on the proceedings in this *536 case. The action against LeNeve was not an action "against the debtor" within the meaning of the statute. See Carley Capital Group v. Fireman's Fund Ins. Co., 889 F.2d 1126, 1127 (D.C.Cir.1989); Fla. E. Dev. Co., Inc. of Hollywood v. Len-Hal Realty, Inc., 636 So.2d 756, 758 (Fla. 4th DCA 1994). Because Via South owned 99% of Indiantown Realty Partnership, it did not seek damages against the partnership. After the initial ruling of the arbitration panel, the partnership's interest became aligned with Via South in securing damages from L & G and LeNeve. Also, a number of federal courts have recognized that "[t]he automatic stay is for the benefit of the debtor and if it chooses to ignore stay violations other parties cannot use such violations to their advantage." In re Fuel Oil Supply & Terminaling, Inc., 30 B.R. 360, 362 (Bankr.N.D.Tex.1983). Therefore, in cases where the stay applies and the debtor or its trustee chose not to invoke it, "no other party may attack any acts in violation of the automatic stay." See In re Brooks, 79 B.R. 479, 481 (9th Cir.1987).
Affirmed.
STONE and SHAHOOD, JJ., concur.
NOTES
[1] The counterclaims asserted by Indiantown Partners, L & G, and LeNeve sought relief against some non-parties who were not bound to arbitrate under the partnership agreement. The other non-parties refused to consent to the panel's jurisdiction and were not required to arbitrate.