931 So.2d 155 (2006)
Gaeton "Guy" DELLA PENNA, Appellant,
v.
Don ZABAWA, et al., Appellee.
No. 5D05-1324.
District Court of Appeal of Florida, Fifth District.
May 12, 2006.
Rehearing Denied June 19, 2006.
*156 William T. Kirtley, of William T. Kirtley, P.A., Sarasota, for Appellant.
Don Zabawa, Boynton Beach, pro se.
Giovanni P. Prezioso, General Counsel, Jacob H. Stillman, Solicitor, and Mark Pennington, Assistant General Counsel, Washington, D.C., Amicus Curiae for Securities and Exchange Commission.
*157 GRIFFIN, J.
This is an appeal of a final order vacating an order entered by a predecessor judge and confirming an arbitration award. We affirm.
Don Zabawa, the appellee, became disabled in a bicycle accident in March 1997 and has since been unable to work. In an attempt to remedy his worsening financial situation, he decided to invest in the stock market. In September 1997, he was referred to Randy Derouin, a stockbroker with Wealth Management Financial Group, Inc. ("Wealth Group").
Zabawa is a high school graduate with no investment experience, and he gave Derouin complete control of his account. From September 1997, through December 2000, Derouin used Zabawa's monies to make a series of disastrous investments. When the account dwindled, Derouin urged Zabawa to provide him with additional funds. Zabawa, who was under severe financial pressure, did this by taking out advances on numerous credit cards, settling his personal injury action for less than it was worth, and taking out multiple mortgages on his property. When the smoke cleared, the account was worthless and Zabawa had lost nearly $300,000.
Zabawa's transactions were processed by a company called FAS Wealth Management Services, Inc. ("FAS Wealth") and its predecessor, Executive Wealth Management Services, Inc. ("Executive Wealth"). FAS Wealth was a member of the National Association of Securities Dealers, Inc. ("NASD"), a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission. As part of the registration process, the firm, through its owner, had signed a Form U-4, entitled "Uniform Application for Securities Industry Registration or Transfer" form, which provided for arbitration of disputes as follows:
I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.
(emphasis in original). NASD Rule 10101, read in combination with Rule 10301, required its members to arbitrate, among others, "any dispute, claim, or controversy [with its customers] arising out of or in connection with the business of any member of the Association...."[1]
Apparently relying on these provisions, on December 27, 2000, Zabawa filed a statement of claim with NASD. The claim alleged that defendants had engaged in numerous improper practices with respect to his account, such as churning, trading on margin without signed documents, buying unsuitable securities, making false statements, and buying penny stocks in violation of the law. The named defendants were Derouin, the stockbroker who had managed the account, and FAS Wealth, which had processed the transactions.
Following NASD's procedures, Zabawa and the defendants jointly selected a panel of arbitrators. However, on July 2, 2001, *158 Zabawa filed a motion to amend his statement of claim to include claims for negligent supervision against two men who allegedly had supervision of Derouin. The first was Gaeton "Guy" Della Penna ("Della Penna"), who was president, CEO, and the primary control person of FAS Wealth. The second was Lee Siler ("Siler"), who was a registered representative of FAS Wealth. Siler was also president and controlling owner of Wealth Group, the company that employed Derouin. Derouin had allegedly represented to Zabawa that they were all the same entity, but FAS Wealth was apparently the only entity registered with NASD.
The panel was already seated with respect to Zabawa's claims against Derouin and FAS Wealth when Zabawa moved to amend the statement of claim to include Della Penna and Siler. The panel permitted the amendment, which added claims against the new defendants under federal and state securities laws, NASD's conduct rules and Florida's common law.
An evidentiary hearing was held on Zabawa's claims in January 2002. At the hearing, Siler objected to the arbitration on the basis that he had not been permitted to participate in selecting the arbitrators. He objected, despite having signed a "Uniform Submission Agreement" prior to the hearing, in which he agreed to submit the dispute with Zabawa to arbitration. Siler's objection was rejected by the panel. Della Penna did not sign a "Uniform Submission Agreement," but voiced no objections to the arbitrators at the hearing. On February 15, 2002, the arbitrators awarded Zabawa $125,000 in compensatory damages on his claims, for which defendants were held to be jointly and severally liable. Zabawa was also awarded reasonable attorneys fees and costs.
Zabawa filed a motion in the lower court to confirm the award. On October 24, 2002, however, Judge Alley agreed with defendants that the award should be vacated as to Della Penna and Siler because they had not been permitted to participate in the selection of the arbitrators. Judge Alley found this to be a violation of NASD's rules and "the Securities and Exchange Commission's overriding concern that parties have a significant role in determining the composition of their arbitration panels." A motion for rehearing was denied and two appeals to this court were dismissed for lack of jurisdiction.
Upon dismissal of his second appeal, Zabawa, acting pro se, moved to recuse Judge Alley on June 14, 2004. Three days later, on June 17, 2004, Zabawa also filed a motion seeking confirmation of the award that had been vacated by Judge Alley. Judge Alley entered an order disqualifying herself on June 21, 2004, while observing that the motion had been "filed in bad faith seeking another forum."
Following Judge Alley's recusal, Zabawa filed two additional motions asking the court to rule on his previous motion to vacate Judge Alley's ruling insofar as it pertained to Della Penna and Siler.[2] After a hearing on the motion on March 11, 2005, Judge Jacobus vacated the earlier ruling made by Judge Alley and confirmed the award in its entirety. In rejecting the procedural objections of Siler and Della Penna to confirmation, the court first observed that the motion was "timely," simply noting that such motions must be filed "within 20 days of the order of disqualification, unless good cause is shown for a delay in moving for reconsideration or other grounds for reconsideration exist." On the merits, the court rejected the argument *159 that parties added after selection of a panel of arbitrators had the right to begin the selection process anew. The court explained:
f. On re-consideration pursuant to rule 2.160(h), the Court finds that the motion to vacate the arbitration award is without merit. Defendant Siler signed a Uniform Submission Agreement and Defendant Della Penna agreed to be bound by the arbitration procedure by signing his security dealer form and by participating in the arbitration proceeding.
g. Rule 10308, NASD Code of Arbitration Procedures, provides for the selection of arbitrators. It also addresses additional parties. If a party is added before the Director has consolidated the other parties' ranking (i.e. before the arbitrators are selected), then the added party can participate in the process. Della Penna, Siler and Detweiler were added after the arbitrators were selected. They objected and were overruled by the Arbitrators. Arbitration Rule 10324 provides that the arbitrators shall be empowered to interpret and determine the applicability of the Code.
The Defendant argues [sic] that they were denied due process by not being able to participate in the selection process of the arbitrators. They argue that the rules are silent as to the parties added after the arbitrators are selected. Their argument is without merit. First, if parties could not be added after the arbitrators were selected, there would be no need for Rule 10308(c)(6) since every party would have the right to the selection process before the arbitrators are selected. Therefore, the complement to the Rule is that if a party is added after the selection process is complete, that party is bound by the Panel selected. Second, due process requires reasonable notice of hearing and a fair hearing. State ex rel. Inv. Corp. of South Florida v. Board of Business Regulation, 227 So.2d 674, 677 (Fla. 1969). The Defendants had notice of the hearing and actively participated in the proceeding. Third, the Arbitrators interpreted the Rules, heard the Defendants' arguments, and ruled against them. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 [123 S.Ct. 588, 154 L.Ed.2d 491] (2002).
Judgment was entered in favor of Zabawa against all defendants, including Della Penna, jointly and severally, in the amount of $125,000, together with interest at the statutory rate from the date of the initial arbitration award.
Della Penna has appealed the confirmation of the award. The threshold issue raised on appeal is whether Zabawa's petition to vacate Judge Alley's ruling was timely under Florida Rule of Judicial Administration 2.160(h):
(h) Prior Rulings. Prior factual or legal rulings by a disqualified judge may be reconsidered and vacated or amended by a successor judge based upon a motion for reconsideration, which must be filed within 20 days of the order of disqualification, unless good cause is shown for a delay in moving for reconsideration or other grounds for reconsideration exist.
Della Penna argues that the motion was untimely, as it was not filed until November 15, 2004, some five months after entry of the order of recusal and nearly two years after the order under attack was originally entered. However, three motions for reconsideration of Judge Alley's ruling were filed by Zabawa. The first of these motions was filed on June 17, 2004, just three days after the filing of the motion to recuse Judge Alley. The motion, which was ostensibly directed at the "Chief Judge" of the Eighteenth Judicial Circuit, *160 argued that Judge Alley's order should be reversed and the arbitration award should be confirmed under the applicable law and Supreme Court precedent. Given the purpose and operation of the rule, this motion should be treated as timely under the rule. Also, we note that Rule 1.260(h) requires only that the motion be filed "within 20 days of the order of disqualification." The rule does not specifically require the motion to be filed after the order of disqualification is entered. Cf. Lyn v. Lyn, 884 So.2d 181 (Fla. 2d DCA 2004).
The main issue for our consideration is whether Judge Jacobus properly vacated Judge Alley's earlier ruling as to Della Penna and confirmed the prior award to Zabawa. The Federal Arbitration Act[3] identifies four grounds upon which to vacate an award. 9 U.S.C.A. § 10(a)(1)-(4). Section 682.13, Florida Statutes, recognizes essentially the same grounds for vacating an award. Unless one of the statutory grounds has been proved, an arbitration award may not be vacated. LeNeve v. Via South Florida, L.L.C., 908 So.2d 530 (Fla. 4th DCA 2005). "Appellate review of orders granting or denying a motion to vacate an arbitration award are governed by `the same standards as in any ordinary case, whereby findings of fact are reviewed under a competent and substantial evidence standard and legal questions are reviewed de novo.'" Id. at 534, quoting Boyhan v. Maguire, 693 So.2d 659, 662 (Fla. 4th DCA 1997).
The primary basis offered by Della Penna for vacating the award is that the arbitrators "exceeded their powers" by proceeding to arbitration. This is grounds to vacate the award under both the Federal Arbitration Act and Florida law. See 9 U.S.C.A. § 10(a)(4) (award may be vacated "where the arbitrators exceeded their powers"); § 682.13(1)(c) (court shall vacate an award upon application of a party when "[t]he arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers."). Della Penna apparently theorizes that he had a "due process" right to participate in the selection of the arbitrators and that since he was denied that right his case was arbitrated by a panel which "exceeded their powers." He insists that NASD's policies cannot be used to supply procedures where none exist, and that NASD's rules either permit his participation or are silent on the procedures to be used in seating an arbitration panel where there are after-added parties. He also argues that the court is the proper forum to resolve whether the panel was properly seated under the contract to arbitrate, relying on the principle that an arbitrator has no power to determine his own jurisdiction. See AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).
Zabawa responds that Della Penna was a member of NASD and was clearly bound by NASD's arbitration rules. Della Penna agreed to arbitrate the dispute in this case, by signing a Form U-4 on behalf of FAS Wealth in which he agreed to arbitrate any dispute that arose with a customer. He argues that the question whether the panel was properly seated is a procedural issue which was properly addressed by the arbitrators *161 under Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), and because the arbitrators did not act outside their jurisdiction, there was no basis for vacating the award under section 682.13(1)(c), Florida Statutes. He also notes that, although Siler objected to the panel selection, Della Penna appeared at the proceeding and, through counsel, stated, "Yes, we accept the Panel." In addition, at the conclusion of the hearing, both Della Penna and FAS Wealth acknowledged that they had had a full and fair opportunity to be heard. Zabawa says this conduct operated as a waiver of this issue by Della Penna.
Della Penna's argument that the arbitrators exceeded their authority relies heavily on Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos, 25 F.3d 223 (4th Cir.1994), which was also relied on by Judge Alley. Cargill has been cited for the proposition that an award entered by arbitrators who were selected by a method that did not conform to the method provided in the arbitration contract must be vacated. See, e.g., Hugs & Kisses, Inc. v. Aguirre, 220 F.3d 890, 893 (8th Cir.2000); Bowater Inc. v. Zager, 901 So.2d 658 (Ala. 2004); see also Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830 (11th Cir. 1991). The Cargill court found partial authorization for its actions in section 5 of the Federal Arbitration Act ("FAA"), which provides:

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.
9 U.S.C. § 5 (emphasis added).
For the sake of argument, we accept the proposition that arbitrators appointed outside the method outlined in the parties' contract exceed their authority by deciding issues which the parties have agreed to arbitrate. See R.J. O'Brien & Assoc., Inc. v. Pipkin, 64 F.3d 257 (7th Cir.1995). Nonetheless, we do not find Cargill controlling in this case. Cargill involved an unambiguous contract which provided a method for selection of the arbitrators which plainly was not followed. The trial court was not required to interpret the parties' contract before determining whether the method chosen by the parties had been followed, as the contract permitted only one interpretation.
This case, by contrast, requires an interpretation of NASD's rules before it can be determined whether the method set forth for selection of the arbitrators was followed, since the rules are effectively silent on the issue of the rights of the parties to participate in selection of the arbitrator when they are added, as here, after consolidation. NASD's rules give parties the right to participate in the selection of arbitrators by ranking and striking the arbitrators only if the parties are added to the proceeding prior to the Director's consolidation of the parties' lists. Regarding "additional parties," the rule states:
(6) Additional Parties

If a party is added to an arbitration proceeding before the Director has consolidated *162 the other parties' rankings, the Director shall send to that party the list or lists of arbitrators and permit the party to strike and rank the arbitrators. The party must return to the Director the list or lists with numerical rankings not later than 20 days after the Director sent the lists to the party. The Director shall then consolidate the rankings as specified in this paragraph (c).
NASD Rule 10308(c)(6) (emphasis added). The rules also contain the following provisions allowing removal of arbitrators for a conflict of interest or bias:
(d) Disqualification and Removal of Arbitrator Due to Conflict of Interest or Bias
(1) Disqualification By Director
After the appointment of an arbitrator and prior to the commencement of the earlier of (A) the first pre-hearing conference or (B) the first hearing, if the Director or a party objects to the continued service of the arbitrator, the Director shall determine if the arbitrator should be disqualified. If the Director sends a notice to the parties that the arbitrator shall be disqualified, the arbitrator will be disqualified unless the parties unanimously agree otherwise in writing and notify the Director not later than 15 days after the Director sent the notice.
(2) Removal by Director
After the commencement of the earlier of (A) the first pre-hearing conference or (B) the first hearing, the Director may remove an arbitrator from an arbitration panel based on information that is required to be disclosed pursuant to Rule 10312 and that was not previously disclosed.
(3) Standards for Deciding Challenges for Cause
The Director will grant a party's request to disqualify an arbitrator if it is reasonable to infer, based on information known at the time of the request, that the arbitrator is biased, lacks impartiality, or has an interest in the outcome of the arbitration. The interest or bias must be direct, definite, and capable of reasonable demonstration, rather than remote or speculative.
NASD has interpreted these rules:
to mean that parties added to a cause after arbitrators have been appointed do not have the right to participate in the arbitrator selection process. The reason for this interpretation is that a case would be significantly disrupted if the arbitrator selection process had to start anew whenever a new party was added to a case. Cases would be delayed, prior decisions of arbitrators could be subject to challenge, and parties dissatisfied with the arbitrators in a case could obtain a new panel simply by adding a party to the case.
In her letter to Judge Alley, Rose Schindler, Southeast Regional Director of NASD Dispute Resolution, explained that once the panel had been selected, NASD's rules gave after-added parties only the right to challenge an arbitrator for cause (i.e. for conflicts of interest, bias and similar disqualifications). This interpretation of the rules is consistent with that now urged by the Securities and Exchange Commission, which filed an amicus curiae brief in this appeal.
Della Penna asserts that this Court should interpret the rules to permit a right to participate in the selection of arbitrators even after consolidation. However, this appears to be an issue for the arbitrator and not the court under Howsam, 537 U.S. 79, 123 S.Ct. 588, and Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). In Howsam, which was relied on by Judge *163 Jacobus in confirming the award, the Court considered whether the trial court or the arbitrator was entitled to interpret and apply a NASD rule which essentially contained a statute of limitation. The Supreme Court held that the arbitrators should interpret and apply NASD's rule. While acknowledging that the question of arbitrability is generally an issue for the courts, the Court emphasized that true questions of arbitrability are limited in nature. The Court explained that the phrase is only "applicable in the kind of narrow circumstances where contracting parties would likely have expected a court to have decided the gateway matter...." 537 U.S. at 83, 123 S.Ct. 588. Among the "gateway" disputes to be decided by the courts are whether the parties are bound by a given arbitration clause and whether an arbitration clause in a concededly binding contract applies to a particular dispute. By contrast, the Court said that "`procedural' questions that grow out of the dispute and bear on its final disposition" are presumptively for the arbitrator to decide. Id. at 84, 123 S.Ct. 588, quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Similarly, "the presumption is that the arbitrator should decide `allegation[s] of waiver, delay, or a like defense to arbitrability.'" Howsam, 537 U.S. at 84, 123 S.Ct. 588, quoting Moses H. Cone Memorial Hosp. v. Mercury Constr., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
In Green Tree, which was decided after Howsam and was not cited by either party, a lender had been subjected to arbitration of two class actions brought against it concerning essentially the same loan practice. The contracts in question contained a broad arbitration clause pursuant to which the parties agreed to submit to the arbitrator "[a]ll disputes, claims or controversies arising from or relating to this contract or the relationships which result from this contract." The contracts also provided that disputes "shall be resolved... by one arbitrator selected by us [Green Tree] with consent of you [Green Tree's customer]." 539 U.S. at 451, 123 S.Ct. 2402. Despite the reference to an arbitrator chosen with the consent of a single named customer (e.g. "you"), the lower courts held that class arbitration was permissible and confirmed the awards. On appeal, the South Carolina Supreme Court consolidated the two actions and held that the contracts were silent on the issue of class arbitration and, consequently, authorized class arbitration. A plurality of the United States Supreme Court vacated the decision of the South Carolina Supreme Court, holding that the contracts were ambiguous as to whether they permitted class arbitration and the issue was presumptively for the arbitrator. Because there was nothing in the contracts to contradict the presumption (indeed, it contained a broad arbitration provision), the court held that the issue had to be decided by the arbitrator. Id. at 452, 123 S.Ct. 2402.
Howsam and Green Tree were recently cited by the Fourth Circuit Court of Appeals as authority for holding that the proper number of arbitrators is a "procedural" issue not for judicial resolution. See Dockser v. Schwartzberg, 433 F.3d 421 (4th Cir.2006). The court determined that the issue was one which had to be resolved by the arbitrators or the AAA, explaining in relevant part:
The presumption of arbitration applies in this case, because whether one arbitrator or three ought to hear the parties' dispute is not a "question of arbitrability," but instead a procedural one. It is not an issue that parties would have expected a court rather than an arbitrator to decide, see Howsam, 537 U.S. at *164 83, 123 S.Ct. 588, because the AAA rules, which the parties contractually agreed to employ, provide specific non-judicial procedures for its resolution. Moreover, judicial decision is not necessary to "avoid[ ] the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate," id. at 83-84, 123 S.Ct. 588, because the parties do not dispute that their arbitration clause is binding.
Id. at 425.
The present case, like Howsam, involves an interpretation of NASD's rules, a "procedural" question which grows out of the dispute, rather than a gateway question of arbitrability. Because the interpretation of NASD's rules was properly left to the arbitrator, Della Penna is unable to establish in this case that the arbitrators exceeded their powers by interpreting the rules and resolving this dispute.
Finally, Della Penna waived the selection issue by failing to object to the panel's exercise of jurisdiction. An arbitrator's jurisdiction derives from the parties' agreement and can broaden during the course of arbitration "by waiver, failure to object and consent." LeNeve, 908 So.2d at 534-535 (quoting City of West Palm Beach v. Palm Beach County Police Benev. Ass'n, 387 So.2d 533, 534 (Fla. 4th DCA 1980)). Here, consistent with his obligations under the U-4 registration form, Della Penna appeared at the proceeding and, through counsel, stated, "Yes, we accept the Panel." See Brook v. Peak Internat'l, Ltd., 294 F.3d 668 (5th Cir. 2002).[4]
AFFIRMED.
THOMPSON, J., concurs.
ORFINGER, J., concurs specially, with opinion.
ORFINGER, J., concurring specially.
I agree with the majority opinion regarding the timeliness of Zabawa's petition to vacate Judge Alley's ruling and its conclusion that Della Penna waived the selection issue by failing to object to the panel's exercise of jurisdiction. Consequently, I think it is unnecessary for us to address the broader issues contained in the majority opinion.
NOTES
[1] Zabawa may also have signed an agreement with FAS Wealth to arbitrate any dispute arising out of these transactions. Typically, these agreements provide for arbitration before any self-regulatory organization ("SRO") or exchange of which the broker is a member. If such an agreement existed in this case, we have been unable to locate it in the record on appeal.
[2] Zabawa says that he filed these additional motions out of an abundance of caution each time his case was reassigned. The final motion was filed on November 15, 2004.
[3] As this court explained in Qubty v. Nagda, 817 So.2d 952 (Fla. 5th DCA 2002), the Federal Arbitration Act applies by its terms to an arbitration clause in a contract involving interstate commence. Id. at 955. "With respect to these contracts, federal law supersedes the Florida Arbitration Code, and the Florida Arbitration Code is applied in such cases only to the extent it is not inconsistent with federal law." Id. at 955-956. Qubty also stated that "[b]rokerage contracts concerning the sale of securities have been consistently treated as contracts involving interstate commerce." Id. at 956.
[4] In his final arguments, Della Penna has included in his appeal a number of factual and legal issues which he says improperly resulted in an award in favor of Zabawa, but these are not the type of errors which can be corrected on a motion to vacate. See Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327 (Fla.1989).